Gray *vs.* Crocheron.

## GRAY *VS.* CROCHERON.

1. The wrongful taking or detention of a personal chattel, or other illegal assumption of ownership, or using or misusing of it, amount to a conversion.

2. So, a temporary conversion will make a defendant liable; as, if one ride a horse, or control the services of another's slave, though he afterwards restore them to the true owner—the cause of action, which was once perfect, still remains, and the restoration will only go in mitigation of damages.

3. If a slave be lost, during the time he is employed by a defendant, without the owner's consent, defendant is liable in trover to the full value of the slave.

4. But if the employment be at an end when the slave is lost, defendant will only be liable for the temporary conversion, and the measure of damages, instead of being the value of the slave, will be the injury resulting to the plaintiff, from the employment, which, under some circumstances, may possibly be increased.

Error to the Circuit court of Autauga.

Trover for a slave, tried before *Harris, J.*

The plaintiff in error brought an action of trover in the Circuit court of Autauga, against the defendant, for the conversion of a slave. The defendant pleaded "not guilty," and the case was submitted to the jury. On the trial, a bill of exceptions was taken by the plaintiff, from which it appeared to be probable that the slave alleged to have been converted, was sent across the Coosa river with a letter, by the defendant. The slave was the ferryman at that place, and was afterwards missing. His clothes were found about twenty yards

above the ferry landing, and the skiff and flat belonging to the ferry, were at their proper places.    The plaintiff's counsel requested the court to charge the jury, that if they believed that the slave was the property of the plaintiff, and that the defendant employed him without the assent of his master, such employment amounted to a conversion, and unless the slave had thereafter been restored or come to the possession of the plaintiff, that the plaintiff was entitled to recover, which charge the court refused to give, but charged the jury, that if they believed the slave was lost while in "the employment of the defendant, then the defendant was liable for the value of the negro; but if they believed the slave was not lost while in the employment of the defendant, but came to his death in another manner, that then, the defendant was not liable."    To all which, the plaintiff excepted, &c.

Plaintiff in error assigned—

1. That the court erred in refusing the charge prayed for ;

2. That the court erred in the charge given.

*Geo. Goltdhwaite,* for the plaintiff in error.
*Thorington,* contra.

*Goldthwaite,* for the plaintiff in error, contended, that the employment of the slave without the assent of the owner, was a conversion for which trover could be maintained—(6 Bac. Ab, 679; 1 Stark. Rep. 173; 4 T. R. 364; 3 Stark. Ev. 1493; 2 J. J. Mar. 84; 2 Salk. 255.) That if the slave had been re-delivered, or returned by

Gray *vs.* Crocheron.

defendant, he would still have been liable, and that the return would have gone only in mitigation of damages —(1 Roll. Abr. 5; Bull. N. P. 46; 6 Bac. Ab. 679; 3 Camp. 396; 1 Chit. Pl. 155; 5 Mass. 104; 6 Mod. 312; 10 John. 172; 7 John. 254; 3 B. & A. 687; 2 Saund. Ev. 476.)

COLLIER, C. J.—In St. John vs. O'Connel, use, &c. (7 Porter's R. 466,) it was decided, that the wrongful taking or detention of a personal chattel, or other illegal assumption of ownership, or using or misusing of it, were all acts amounting to a conversion. So, a temporary conversion will make a defendant liable; as, if a person ride the horse, or control the services of another's slave, though he afterwards restore them to the owner, the cause of action, which was once perfect, still remains; and the restoration will only go in mitigation of damages.

Taking these rules for our guide, we think it clear, that the judge of the Circuit court could not, with propriety, have refused the motion of the plaintiff's counsel for instructions to the jury. The first branch of the motion merely assumed it as law, that if the defendant employed the plaintiff's slave, without the master's assent, he was guilty of a conversion.

The second branch supposed, that if after the employment of the slave by the defendant, he came, or was restored to the plaintiff's possession, he could not recover. In this, the plaintiff's counsel yielded more to the defendant than he could have claimed, for the return of the slave, after an unauthorised employment, would only

8 P. 25

have diminished the damages, without destroying the right of action.

The charge given was not a fair substitute for that which was asked, and considering the facts disclosed by the bill of exceptions, cannot be maintained.   The jury were informed, that if the slave was lost while in the defendant's employment, the defendant was liable in damages to the extent of his value, but if he was not *thus lost then*, the defendant was not *liable*.   The first part of the charge is well enough, but the latter part, referring to the rules we have laid down, is clearly erroneous. Shall the illegal use of the services of the slave, which was *in itself a conversion*, be placed out of view, if he happen to be lost after he has completed that service? We have already shown that the reverse is the law.

That the defendant is chargeable, if the slave was lost during the time he was employed by the defendant, without the plaintiff's consent, and that even to his full value, is indisputable; but if the employment was at an end when the slave was lost, though the defendant would be liable for the temporary conversion, yet the measure of damages, instead of being the value of the slave, would be the injury resulting to the plaintiff from such employment, which, under some circumstances, might possibly be increased.

The slave in controversy appears to have been the *ferryman* of the plaintiff, and might therefore be considered in his owner's possession, on either side of the river; unless controlled by some one else.   If, in crossing the river, to carry a letter for the defendant, he was lost, the defendant would be compelled to make good his value;

but if after having reached the other side of the river, and discharged his errand, he was lost, while following the inclination of his own will, the defendant would be liable only for the temporary conversion. We have thought it proper thus to state the law; which is applicable to this case, that it may be correctly determined upon at a future trial. It remains but to say, that the judgment of the Circuit court must be reversed, and the cause remanded.