# Crosswell *v.* Lehman, Durr & Co.

### *Trover for Conversion of Cotton.*

1. *Partners; rights of, in partnership property.*—Each partner has an equal title and right of possession in partnership property, and neither partner, by any act to which the others do not assent, can change the title or possession, so as to confer absolute, individual ownership and right of possession in himself.

2. *Same.*—The storage in a warehouse by one partner, without the consent of the others, of partnership goods, as his own individual property, will not change the title or right of possession of the partnership—the possession of one being the possession of all, and either may receive the goods and discharge the bailee.

3. *Bailee; when may discharge himself by delivery to other than the bailor.*—While the bailee can not set up against his bailor, a title which another does not assert, and retain the goods himself; yet, when he shows that he has yielded possession to a title superior to the bailor's, or made delivery to one entitled to receive the goods and discharge him, he will be protected.

4. *Same.*—A warehouseman, when sued by one partner, who, without the assent of the other, had stored partnership goods as individual property, may discharge himself by proof of a delivery, in good faith, to another partner; and his defense is not impaired, because he intended to deliver to a third person, whom he honestly believed entitled to receive them under a custom of trade, when, in fact, such person's connection with the goods was part of a stratagem or fraud whereby such partner obtained possession.

APPEAL from Circuit Court of Montgomery.

Tried before Hon. J. Q. SMITH.

This was an action of trover, brought by R. H. Crosswell, against Lehman, Durr & Co., warehousemen, to recover damages for the conversion of nine bales of cotton by the latter.

The cotton in controversy was the property of Pierce, Nummy & Co., who cultivated the plantation on which it was raised. Nummy & Co., a partnership in other matters, constituted one member of the firm and Pierce the other. The accounts of the partnership were unsettled, and there was a contention among the partners about it, with regard to Pierce, the other two claiming that he was largely indebted

to the partnership. The testimony tended to show that Crosswell took the cotton from some wagons which Pierce had sent for it, and stored in Crosswell's own name in the warehouse of defendants, taking a receipt therefor, which stated that the cotton was stored "subject to the order of Crosswell, or the bearer of the receipt on payment of customary charges," &c. Pierce was informed of this, and that the cotton was thus stored "for the purpose of forcing a settlement of the partnership."

Pierce testified that he was not indebted to the firm, and that he did not consent to such disposition of the cotton. Availing himself of a custom prevailing among warehousemen in the city of Montgomery, to "turn out cotton" for shipment, upon the crder of reputable buyers, without requiring the production of the receipts, Pierce, without the knowledge or consent of Crosswell, procured Bedell & Son, cotton buyers, to send the warehousemen an order to turn out this cotton for shipment, and defendants, supposing the order was given in good faith, and that Bedell & Son held the receipts, "turned out the cotton" to Bedell & Son, who delivered it to Pierce, and the latter shipped the cotton to New York, where he sold it on his own account. Plaintiff made a demand upon defendants for the cotton, with which, of course, they could not comply.

When the demand was made, Pierce was present, and asked Crosswell to whom it belonged, and the latter replied that "it belonged to the firm of Pierce, Nummy & Co. upon a settlement of accounts." To the introduction of this evidence, called out by the defendant, plaintiff objected, but the objection was overruled and the evidence admitted against his exception. The court also admitted the articles of partnership, against the objection and exception of plaintiff. There were also other rulings to which plaintiff excepted, which are not material in the view this court took of the case. The foregoing summary is the substance of the testimony, and the court, upon defendant's request, charged the jury if they believed the evidence to find for the defendant. The plaintiff excepted to this charge, and, in consequence, was forced to take a non-suit, with bill of exceptions, &c. This ruling is now assigned as error.

ELMORE & GUNTER, for appellant.—A partner may retain exclusive possession of partnership property until a settlement; at all events, the other partners could only resort to equity, and then a receiver would take the property and prevent the other partners from disposing of it, retaining it as trust assets to await a settlement. This possession is valu-

[Crosswell v. Lehman, Durr & Co.]

able, and the bailee, bound to protect the rights of the bailor, can not discharge himself by a voluntary delivery to another partner. The bailee can not defend against the bailor unless the latter's possession was *tortious.*—Story on Bailments, §§ 450, 582. The privity of contract and rules of public policy alike estop the bailee from disputing the bailor's title.—7 Ala. 280; 34 Ala. 565; 2 B. & C. 540; 1 Cowen, 690; 11 Paige, 365. It is no answer that the cotton went into possession of a partner. The partner could not have gotten possession without an accounting. This was a legal advantage and a valuable right the bailor had, and if the bailee, who is bound to protect his rights, makes such surrender, he gives away the bailor's rights and is answerable in damages.

STONE & CLOPTON, *contra.*—The contract of bailment would be discharged without doubt by delivery to Crosswell, or to his duly authorized agent. The property belonged to a firm; each of the partners had equal title and right to it. No matter what partner held it, it belonged to the firm. If it had been stored in the firm name, certainly either partner's receipt would be good. The mere deposit in the individual name of Crosswell, did not change the legal effect of the bailment. A delivery to one partner was a delivery to the partnership. Pierce had the same legal right to receive, as Crosswell did to deposit. If the warehouseman converted the property by delivery to Pierce, did not Pierce become a trespasser in taking the goods? If he is not a trespasser, the warehousemen did not convert the property by delivery to him. A partner is not a trespasser, because he receives partnership property from the bailee without the consent of another partner. Pierce's receipt was, in legal effect, Crosswell's receipt, as much so as if he had been armed with the latter's power of attorney to receive the cotton. The intention with which the bailee makes delivery is immaterial, so long as the goods reach the right direction. It is the fact of delivery to one authorized to receive, which discharges the bailee. It does not lie in the mouth of the partnership, after the goods are delivered, to say the bailee is accountable, because by reason of a trick of one of the partners, the bailee thought he was delivering to one who had bought the partnership property. As to when delivery to person other than bailor will discharge bailee, see *King v. Richards,* 6 Wharton, (Pa.) 418; Story on Bailments, § 61; Edwards on Bailments, p. 84; Parsons on Contracts, vol. 2, p. 94; *Jacand v. Gordon & French,* 12 East, 317.

BRICKELL, C. J.—A partnership is an entirety; the title to its property resides not in the individual members, but in the partnership. Every partner owns the whole property, subject to the equal ownership of every other partner, and without the consent of his associates, no one partner can convert his ownership of any part, into a separate, absolute ownership.—Parsons on Part. 168. Not only does the title to partnership property reside in the partnership, but the possession also, and each partner has an equal right with his associates to possession, from which he may not be rightfully excluded, without the interference of a court of equity.— *Law v. Ford*, 2 Paige, 310. Each partner may receive the property, or collect its debts, and a delivery or payment to him is a delivery or payment to the partnership. The acts or contracts of one within or belonging to the business of the firm, are binding on the partnership, because within the authority the nature of the association confers, and for the prevention of the frauds which could otherwise be practiced on those dealing with them.—Parsons on Part. 95–102.

The cotton, the subject of the suit, was not the property of the plaintiff, though stored with the appellees, by him as his individual property. Such storing did not change the title—neither by that or any other act in which his associates did not concur, could the appellant change the title, converting it into his separate property. Nor was the possession changed—that resided in all the partners equally—the possession of one is the possession of all. When, therefore, the cotton was delivered to Pierce, it was delivered to the partnership. He had authority to receive it, and to discharge the appellees from all liability for it, as he would have had authority to receive payment of a debt due the partnership, thereby extinguishing it.

But it is said the appellees were the bailees of the appellant, and are estopped to deny his title to the cotton. The general proposition, that a warehouseman is a bailee, standing to his principal in the relation of an agent, and incapable of disputing the title of the principal, is not doubted.— Edwards on Bail. 305–6. The purpose of the rule is to compel fidelity on the part of the agent, and to remove from him all temptations to use his possession for his own personal advantage, and to the injury of his principal. If the warehouseman is informed the goods are not the property of the principal, a delivery to the principal would be a conversion for which the true owner could hold the warehouseman answerable in trover.—*Nelson v. Iverson*, 17 Ala. 217; *Jones v. Fort*, 36 Ala. 449; *St. John v. O'Connel*, 7 Port. 466; *Gray v. Crocheron*, 8 Port. 191; *Lee v. Matthews*, 10 Ala. 682.

Hence, as a general rule, the warehouseman or other bailee not asserting title in himself, may, if the goods are in fact the property of another, refuse to deliver them, taking upon himself the *onus* of establishing a superior title.—Edwards on Bailments, 306 ; *Ogle v. Atkinson*, 5 Taunt. 759. The case of *Biddle v. Bond*, cited in Bigelow on Estoppel, states the principle and its reasoning with great clearness : "We do not question the general rule that one who has received property from another as his bailee, or agent, or servant, must restore or account for that property to him from whom he received it. But the bailee has no better title than the bailor, and, consequently, if a person entitled, as against the bailor, to the property claims it, the bailee has no defense against him." A bailee should not be compelled to submit to litigation which must result adversely to him. He cannot set up the title another does not assert, and keep for himself the goods as his own. But when he has, in submission to the title which would have wrested the goods from him, delivered them, he is entitled to protection ; so, when he has made a delivery to one authorized to receive the goods, and to discharge him from liability. The right of Pierce as a partner to the possession of the cotton, was equal to that of the appellant. A delivery to him was a delivery to the partnership, and submission to the real title and ownership. The entirety of the partnership cannot be severed. The act of one in reference to the partnership property, within the line of his right and authority, is the act of all, and neither can maintain an action in contravention of it.—*Jacand v. French*, 12 East, 317.

The case is an illustration of the justice of the principle, and of the frauds to which innocent third persons, dealing with the partners, would be subject if the law was otherwise. The controversy grows out of a struggle between two partners, each endeavoring to reduce to his own exclusive possession partnership property, compelling the other to sue him for a settlement of partnership affairs. In this struggle they were unmindful of the damage they might inflict on others, strangers to their quarrels. The appellant stores the cotton in his own name—as his own property. The other partner ascertaining this fact, by stratagem and fraud, obtains possession from the depositary. The depositary, to whom no want of good faith is imputable, and who, observing a custom of trade, intended to make, and supposed he was making a proper delivery, is sought to be made liable for the delivery to the appellant's associate, whose right to the cotton and possession was equal to and of the same character as the appellant's. The appellant must be regarded as hav-

ing with Pierce received the cotton, or the appellees must be defrauded by the person the appellant armed with the power of committing the fraud.

It is not material the appellees did not know they were making a delivery to Pierce, but supposed they were delivering to Bedell & Son. They intended to make a rightful delivery, in obedience to their duty; and that it was intended to deceive them does not change the character of the delivery, if it proved in fact to be rightful; and such it was, being to the partnership, in contemplation of law. The rulings of the circuit court, conformed to these views, and its judgment is affirmed.

STONE, J., not sitting.