# Davis *v.* Sowell & Co.

*Bill in Equity by Surviving Partner, against Executors of Deceased, for Injunction in matter of Executory Contract of Partnership.*

1. *Rights of surviving partner.*—The death of one partner invests the survivor with the exclusive right of possession and management of the whole partnership business and property, including *choses* in action as well as *choses* in possession; but he holds in trust for all persons interested in the partnership—the creditors of the firm, and the representatives of the deceased, as well as for himself—and his duty is to settle and close the concern, without unnecessary delay, in the best manner for all parties interested.

2. *Same.*—Where there are two surviving partners, this right and this duty devolve equally upon both; and a delivery or payment to either is a discharge from all liability or obligation to the other.

3. *Same.*—If the partnership had entered into an executory contract, which was only partially performed at the death of the deceased, his death does not absolve either party from performance, in the absence of an express stipulation to that effect; and the existence of the partnership, with its active functions, to be exercised by the survivor, is continued until the contract has been fully performed.

4. *Remedies, legal and equitable, of surviving partner.*—The partnership having entered into a contract with the deceased partner while living, for the sale to him of a large quantity of lumber, in the manufacture of which the partnership was engaged, to be delivered during a period of several months, as required to fill his private contract with an exporting company; and, on the destruction of the mills of the partnership by fire, after the death of the deceased partner, the survivor having contracted with the owners of another mill for the manufacture and delivery of the lumber necessary to complete the contract; if such sub-contractors fail or refuse to deliver the lumber as stipulated, the survivor may maintain an action against them for the breach; if, ignoring his rights, they deliver the lumber to the executor of the deceased partner, the possession of the latter would be wrongful, and he would be liable personally to the surviving partner for any disposition he might make of the lumber; and if he applied it in part performance of his testator's contract with the exporting company, the surviving partner might maintain an action against the estate of the deceased, as for goods sold and delivered. Hence, having these remedies at law, the surviving partner can not maintain a bill in chancery on these facts, without averring other facts which show the necessity for equitable interference.

5. *Same; injunction pending suit, as determined by relative inconvenience and damage to parties.*—In granting or refusing an injunction pending the suit, the court is invested with large discretionary powers, the exercise of which is materially controlled by consideration of the relative

inconvenience and damage which may result to either party; and where, as here, though continuous breaches of contract are threatened, and consequent damage to the plaintiff, suing as surviving partner, there is no averment that the defendants are insolvent, and the injunction would probably cause greater damage to the executor of the deceased partner, by preventing his performance of the testator's contract, in aid of which the contract with the partnership was made, an injunction ought not to be granted.

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 5th January, 1885, by Matthew L. Davis, as the surviving partner of a late partnership alleged to have existed between himself and D. F. Sullivan, deceased, under the name of the Molino Mills Company; against Martin H. Sullivan and Mrs. Emily F. Sullivan, as executor and executrix of the last will and testament of said D. F. Sullivan, and against the persons composing the firm of C. L. Sowell & Co., a partnership engaged in the manufacture of lumber at their mills on the Pensacola and Selma railroad in said county; and sought to enjoin said C. L. Sowell & Co. from delivering any more lumber to said M. H. Sullivan, in violation of complainant's alleged rights, to make them account for the lumber already delivered, and to compel them to deliver to him the residue of the lumber stipulated for in his alleged contract with them. According to the allegations of the bill, the said partnership between D. F. Sullivan and the complainant was formed in July, 1882, in the city of Pensacola, Florida, "upon the following basis: The said D. F. Sullivan owned three-fourths, and complainant one-fourth, of the property called and known as the *Molino Mills*, consisting of the mill-site, machinery, mill-house, dwelling-house, storehouses, planing-mills, dry kiln, locomotives, cars, railroad bed and tracks, docks for stacking lumber, booms, live-stock, office furniture, logs, and between fifty and sixty thousand acres of land; a part of which property is in Florida, and a part in Escambia county, Alabama;" and the interest of each partner in the profits and losses of the partnership was in the same proportion. The bill alleged, also, that the complainant "had the exclusive management of the said mill property, in getting logs, lumber and timber, under contract with other parties, cutting the same into lumber and timber, shipping the same to market, and all other things necessary for the manufacturing and shipment of lumber and timber at said mills, as well as the management and control of the mercantile business connected with said milling business." It was alleged, also, that said D. F. Sullivan "had large private interests outside of the business connected with said partnership," and was engaged, among other things, in purchasing, selling and exporting lumber and timber

from Pensacola to foreign markets; that in the prosecution of this business, in December, 1883, he made a contract with a New York corporation, called the Export Lumber Company, for the sale and delivery within twelve months from the 28th December, 1883, of thirteen million feet of lumber and timber, and, on the 5th day January, 1884, "made a sub-contract with said Molino Mills Company, for the manufacture and delivery to him, on his private account, of two-thirds of said amount of lumber and timber, upon the following terms and conditions: that said company was to cut and deliver said lumber and timber, as fast as vessels chartered for the purpose required it, not exceeding two-thirds of a million feet per month." It was further alleged that, under the contract, the said Molino Mills Company delivered to said Sullivan, up to the time of his death, which occurred on the 14th June, 1884, between two and three million feet of lumber, and complainant continued to manufacture and deliver lumber to his executors until September, 1884, when the mills were destroyed by fire, leaving a large quantity of logs and timber on hand; that complainant, as surviving partner of said firm, immediately contracted with said C. L. Sowell & Co. for the manufacture by them of said logs and timber into lumber, which he delivered to them for that purpose, and, in addition, for the manufacture and delivery by them to him, "on the cars at their said mills," of two million feet of lumber, to be delivered by him to said Sullivan's executors in performance of said contract between him and the Molino Mills Company; that said Sowell & Co. delivered to him, under this contract, over two hundred thousand feet of lumber, which he delivered to said Sullivan's executor, and they afterwards delivered a large quantity to said executor directly, in violation of their contract with complainant, and threaten to deliver to said executor all the residue of the manufactured lumber which they have on hand, he having given them a bond of indemnity against any claim on the part of the complainant; that on the 24th December, 1884, complainant, as the surviving partner of said firm, drew on said Sullivan's executor and executrix "for three cargoes of lumber and timber, a portion of that embraced in said contract and delivered as aforesaid," but they refused to pay the same, or any part thereof, though they had full authority under the will to pay the same; and it was then alleged and charged, "that if said Sowell & Co. are permitted to continue the delivery of said lumber and timber to said Martin H. Sullivan, as they have done, are doing, and threaten to continue doing, it will completely destroy the right of complainant, as surviving partner of said firm, to close up the business of said partnership, and to protect his individual interests and the interests of the creditors

[Davis v. Sowell & Co.]

of said concern." On these allegations, the bill prayed that Sowell & Co. be enjoined and restrained from delivering any more lumber to said Sullivan's executors, either individually or in their representative capacity; that they be required to account for the lumber already delivered to said executors, and to manufacture and deliver to the complainant the residue of the lumber necessary to complete the performance of their contract with him; and the general prayer, for other and further relief, was added.

On the filing of the bill, an injunction was granted by the presiding judge of the City Court of Montgomery. An answer to the bill was filed by Sowell & Co., denying that they had ever made any contract with the complainant for the manufacture or delivery of any lumber whatever, and alleging that the lumber which they had delivered to said Martin H. Sullivan was manufactured and delivered under a contract made directly between him and them.

An answer was also filed by said Martin H. Sullivan, in substance as follows: "Denies that complainant is the surviving partner of the partnership known as the Molino Mills Company, and alleges, on the contrary, that this respondent and said D. F. Sullivan were in fact owners in common of all property and interests of every kind, which they held as partners under the style of D. F. Sullivan; and that the three-fourths interest held by said D. F. Sullivan in the said firm of the Molino Mills, was in fact the partnership property of the firm of D. F. Sullivan, composed of said D. F. Sullivan and this respondent; and on the death of said D. F. Sullivan, this respondent, as surviving partner of the firm conducted under his name, became invested with all the rights and powers which belonged to said firm as a member of the partnership known as the Molino Mills Company." Admits that the Molino Mills Company owned the property described in the bill, "and that complainant owned one-fourth, and three-fourths stood in the name of said D. F. Sullivan, but was in fact the property of the partnership conducted under his name, which was composed, as above stated, of said D. F. Sullivan and the respondent." Denies that complainant "had the exclusive management of said mill property," and avers, "on the contrary, that his management was subject to the orders and control of said D. F. Sullivan, and it was not within the power of said company, nor of said complainant acting for it, to make any purchase of lumber or timber for said mills, except by the special order of said D. F. Sullivan; nor did said company, or complainant for it, ever make, or have the power to make, a shipment of lumber or timber to market; for it was the very basis of said firm of the Molino Mills Company that its business was confined

strictly to the manufacture of lumber and timber, for and under the orders of said Sullivan, and that after the lumber and timber was put on the cars furnished by said D. F. Sullivan, at Molino, the power and control of said company over it ceased; and in the management of said mill business, said D. F. Sullivan required of complainant weekly reports, and often more frequent, of all his acts." Admits that said D. F. Sullivan had large business interests outside of said Molino Mills, and was engaged in the purchase and export of lumber and timber; in all which business, it was alleged, respondent was a silent partner to the extent of one-half; also, that said Sullivan made a contract with said Export Lumber Company of New York, as alleged in the bill, "but denies that he made any sub-contract with said Molino Mills Company, to enable him to fulfill that contract, and alleges that he ordered and required said Molino Mills, as it was his right to do, to manufacture and ship to D. F. Sullivan the lumber and timber required by that house to fulfill said contract with said Export Lumber Company;" and that shipments of lumber were made, pursuant to these orders, to the amount stated in the bill, up to the death of said D. F. Sullivan. After the death of said D. F. Sullivan, and after the respondent, as the surviving partner of the firm conducted under his name, had taken charge of all its business, with the assent and concurrence of Mrs. Sullivan as executrix, the Molino Mills Company continued to furnish lumber to him, to the amount stated in the bill, to enable him to fulfill D. F. Sullivan's contract with the Export Lumber Company; "but it is not true that complainant managed the property of the said Molino Mills, after the death of said D. F. Sullivan, or delivered lumber and timber to this respondent, in any character different from that in which he had acted prior to the death of said Sullivan. Said Molino Mills did not make, nor did complainant for it make, nor did either of them have any power or authority to make, any contract with said C. L. Sowell & Co., as stated in the bill; nor did complainant as surviving partner, or in any other capacity, ever furnish to this respondent in any capacity, or to Mrs. Emily F. Sullivan as executrix, any timber or lumber manufactured by said C. L. Sowell & Co.: on the contrary, all the lumber and timber procured by respondent from them was delivered under contracts made between them and this respondent, and so made by him to enable him, as surviving partner, to fulfill the said contract of his house with said Export Lumber Company. Said Sowell & Co. now have on hand, and are manufacturing a large quantity of lumber, as stated in said bill, which they intend to deliver to this respondent, to enable him to fulfill said contract with said Export Lumber Company, and for which five

[Davis v. Sowell & Co.]

ships are now waiting in the harbor of Pensacola. After said notice was served on them by complainant, this respondent did give them a written guaranty against any claim on the part of said complainant, because he considered it an unjust and unwarranted attempt by complainant to interfere with the business of this respondent, at a time when five ships were waiting for lumber and timber; and it is the intention of this respondent to remove lumber and timber from the mill of said Sowell & Co., which is immediately on said railroad, to load said five ships, as soon as he can do so, to prevent damages under said contract with said Export Lumber Company, which may amount to $100,000." Admits the drawing, presentment and protest of said check, which was for $25,000, "but denies the authority of complainant, in any capacity whatever, to draw said check."

After the filing of the foregoing answers, a motion was submitted to the chancellor, on behalf of "the respondents," to dissolve the injunction; and a counter motion was submitted, on behalf of the complainant, for an attachment for contempt, on account of an alleged violation of the injunction. The chancellor dissolved the injunction, and his decree to that effect is now assigned as error.

FARNHAM & RABB, for appellant.—The equity of the bill, and the right to an injunction as prayed, rest on several well-settled principles of equity jurisdiction: (1.) On the ground of partnership dealings, and the necessity of its intervention to protect the rights of the surviving partner, who is a trustee for all parties interested.—Story's Equity, vol. 1, §§ 668–76; 2 Dan. Ch. Pl. & Pr. (Cooper's ed.), § 1660; 15 Vesey, 218; *Peacock v. Peacock*, 16 Vesey, 49. Where there are two partnerships, having dealings with each other, there is no remedy at law, and a court of equity alone can grant relief. 1 Story's Equity, §§ 679–83. (2.) On the ground of specific performance of an executory contract, against the executor of the deceased partner, where the executor has the authority to perform, and it is his duty to perform.—1 Parsons on Contracts, 131, and notes; 2 *Ib.* 533; 3 *Ib.* 357; Linley's Part., Ewell's ed., vol. 2, pp. 996–7; *Hall v. Warren*, 9 Vesey, 608; *Bennett v. Smith*, 10 Eng. Law & Eq. 274; 16 Jurist, 422. (3.) To prevent a multiplicity of suits, or vexatious litigation, where there is a present right of property or possession, and danger of interference with it, whereby it may be lost, converted, or diminished, unless the court intervenes.—2 Story's Equity, §§ 827–8, 843–4, 872–3, 901–J2, 914–19; Brick. Digest, vol. 1, 684, § 650; 2 Atk 483; *Eldridge v. Hill*, 2 John. Ch. 281; Bispham's Equity, 362–70. (4.) To restrain the

wrongful alienation, removal, or destruction of property, in case of irreparable damage, although a specific performance might not be decreed.—2 Dan. Ch. Pl. & Pr., §§ 1651-57, 1663, note; 2 Story's Equity, §§ 954-59; *Robbins v. Webb*, 68 Ala. 399; *Chambers v. Ala. Iron Co.*, 67 Ala. 353. (5.) Where the complainant makes out a strong *prima facie* case, the injunction will be retained, notwithstanding the denials of the answer, until the final hearing.—*Falls Village v. Tibbetts*, 31 Conn. 165; *Irwin v. Dixon*, 9 Howard, 28; *Stewart v. Chew*, 3 Bland's Ch. (Md.) 440; *Peak v. Hayden*, 3 Bush, 125. That the court is not bound to dissolve the injunction on the denials of the answer, see *Miller v. Bates*, 35 Ala. 580; 17 Ala. 667; 51 Ala. 484; 38 Ala. 613; 67 Ala. 353. That defective allegations, which are amendable, are not sufficient ground for dissolving the injunction, see *Robertson v. Walker*, 51 Ala. 484; *Hooper v. Railroad Co.*, 69 Ala. 529; *Satterfield v. John*, 53 Ala. 127.

STALLWORTH & BURNETT, and STRINGFELLOW & LEGRAND, *contra.*—(1.) On the allegations of the bill, the complainant has a complete and adequate remedy by actions at law; and a case of irreparable damage is not shown, because there is no allegation of the insolvency of the defendants —*Powell v. Plank-road Co.*, 24 Ala. 441; *Comer v. Bankhead*, 70 Ala. 493; 1 Brick. Dig. 692, §§ 768, 783; *Chambers v. Ala. Iron Co.*, 67 Ala. 353. (2.) The material averments of the bill, on which its equity rests (if it has any), are denied by the answers; and the injunction was properly dissolved on these denials.—*Saunders v. Cavett*, 38 Ala. 54; *Brooks v. Diaz & Co.*, 35 Ala. 599; *Mallory v. Matlock*, 10 Ala. 595; *Dunlap v. Clements*, 7 Ala. 539; *Long v. Brown*, 4 Ala. 622; *Collier v. Faulk*, 61 Ala. 105; *Weems v. Weems*, 73 Ala. 462.

STONE, C. J.—According to the averments of the bill, the Molino Mills Company was a partnership, composed of Daniel F. Sullivan, owning three-fourths interest, and Matthew L. Davis, owning one-fourth interest. The bill speaks of no other partners; and if the averments are true, there are no other partners, as there can be no other interests owned by another. Daniel F. Sullivan died before the origin of any controversy, out of which this suit arose. It results, then, that according to complainant's case, he was the sole surviving partner of the Molino Mills property. In Parsons on Partnership, §§ 440*, 442*, the rights and powers of the surviving partner are correctly summarized, as follows: "The death of a partner invests the surviving partners with the exclusive right of possession and management of the whole partnership property and

business; but only for the purpose of selling and closing the same. . . . The survivors have possession, and keep possession of every thing. Until a settlement, the representatives of the deceased can not claim or take any one chattel, or any portion of the merchandise. The survivors are, from the death, trustees for all concerned in the partnership ; for the representatives of the deceased, for the creditors of the firm, and for themselves. Their trust is to wind up the concern in the best manner for all interested, and, therefore, without necessary' delay ; and their powers are such as enable them most effectually to execute that trust. Nor do we know any difference, in this respect, as to the choses in possession, and those in action." If the averments of the bill be true, Davis, the complainant, was entitled to the entire custody, management and control of the property and business interests brought to view and presented for determination in this suit.

The answer of Martin H. Sullivan, one of the executors of D. F. Sullivan, deceased, admits that the Molino Mills property was owned in partnership by Sullivan and Davis ; admits that Davis' interest is what he claims it to be, and that D. F. Sullivan, the testator, held in his own name the remaining three-fourths of the property. The bill and answer substantially agree thus far. The answer, however, sets up that, notwithstanding D. F. Sullivan was the only known partner with Davis in the Molino Mills property, yet he, the said Martin H., was a silent, equal partner with the said David F. in all his business enterprises, including the Molino Mills property, and that said property was in fact held and owned, three-eighths each, by the said Martin H. and the estate of David F., and one-fourth by complainant, Davis. The answer denies that Davis is *the* surviving partner, and sets up that he, Martin H., is also a surviving partner. If this be true, then Davis and Martin H. Sullivan are surviving partners, with the powers enumerated above resting in the two ; and each would have the equal right to possess, manage, and control the partnership effects. It follows from this, that if Martin H. Sullivan was a partner, he was authorized, equally with Davis, to receive the lumber from Sowell & Co., and a delivery by the latter to him was lawful, and discharged them from all liability to Davis.— *Crosswell v. Lehman, Durr & Co.*, 54 Ala. 363. So, the pivotal point—the only really controverted issue of fact—in this aspect of the case, is, whether or not Martin H. Sullivan was a partner in the Molino Mills property. In this disputed question of fact, Sowell & Co. are largely interested ; for, if Davis be the only survivor, it is not perceived how they can defend themselves against a claim by the latter that the property of the partnership shall be delivered to him, the survivor.

As we have said above, there is but one material difference between the facts averred in the bill, and those set up in the answer. It is not denied that Davis was a co-partner with D. F. Sullivan in the Molino Mills property, and that the latter died, leaving Davis surviving him. It is averred, and is not denied, that Davis was a partner only in the mill property, and in large timber lands for supplying timber for the mills' consumption ; that the business of that firm extended only to the procuring of logs, bringing them to the mill, sawing them into lumber or timber, and selling such lumber at a home market; and in such connected enterprises, as were tributary to this chief aim. Sullivan had other and larger employments and enterprises, with which Davis had no connection. Notably, he bought and sold lumber and sawn timber, and supplied cargoes for shipment, procured in part from the Molino Mills, and partly from other mills. It is not stated in so many words, but the irresistible inference, alike from the bill and answer, is, that to the extent he obtained lumber and manufactured timber from the Molino Mills, he, Daniel F. Sullivan, became a purchaser from the Molino Mills Company—Sullivan & Davis. The latter was not interested in the profits or losses, made or suffered after delivery to Sullivan, at the home market.

Shortly before Sullivan's death, he made a contract with a lumber exporting company to deliver to them, at Pensacola, Florida, thirteen millions feet of lumber and timber, for shipment to South America. The delivery was not to be made at one and the same time, but at continuous intervals, running through several months. Soon afterwards, Sullivan died, with little or no part of his contract complied with, but after some preparation had been made for having the lumber manufactured, that it might be delivered. The bill avers that Sullivan contracted with the Milino Mills Company to manufacture and deliver to him two-thirds of this lumber, at the rate of two-thirds of a million feet per month, and that the remaining third he was to obtain from other mills. The answer, while admitting that Davis was no party to the sale to the lumber exporting company, had no interest in that contract, and yet was to furnish every month two-thirds of a million of feet of lumber, to be delivered by Sullivan on his contract with the lumber exporting company, denies that Sullivan made any contract with the Molino Mills Company. Its averment is, that Sullivan simply ordered that company to furnish to him that proportion of the lumber, at that rate per month. This is a distinction without a difference. If Davis had no part or interest in the sale to the lumber exporting company, then the supply of lumber by the Molino Mills Company to Sullivan, to be used in performance of his contract, was a contract of sale, express or im-

[Davis v. Sowell & Co.]

plied, by the company to Sullivan, one of its own members. Taking, then, the substance of the bill and the answer on this question, when Sullivan died, he was under a large executory contract with the Lumber Exporting Company, a very small part of which, if any, had been performed; and the Molino Mills Company, of which Davis was a member, was under a similar contract, in amount two-thirds as great, complied with only to a partial, if any extent. The death of Sullivan did not absolve either party from the performance of his contract, unless there was a stipulation that such event should work that result; and the pleadings are silent as to such stipulation. This executory agreement, not having been performed when Sullivan died, had the effect of continuing the partnership in existence, with its active functions, until its terms were complied with.—Parsons on Partnership, 398*, 417*. So, it would seem to have been of great importance to Sullivan's estate that this large executory contract with the Lumber Exporting Company, existing at the time of his death, should be complied with, and, as contributing thereto, that the Molino Mills Company—Matthew L. Davis, survivor—should comply with its contract.—*Mudge v. Treat*, 57 Ala. 1.

The Molino Mills were burned, before much progress was made in complying with its contract, but having on hand a large quantity of timber, cut and ready to be manufactured into lumber. They had also very extensive timber tracts, from which to procure other timber. The firm of Sowell & Co., millmen, were employed to saw this timber, and, to this end, it was carried to their mill, and there sawed. They were also to saw other timber, to be furnished them from the lands of the Molino Mills, under the superintendence and direction of Matthew L. Davis, the complainant in this suit. Under this contract, Sowell & Co. had manufactured lumber, a considerable quantity of which had been shipped to Pensacola, consigned to Martin H. Sullivan, the executor of Daniel F. Sullivan's will, to be used by him in performing the contract with the Lumber Export Company. They were also engaged in sawing timber, so obtained from the Molino Mills Company, and in shipping the same to M. H. Sullivan, as above. The business was large, rapid and continuous, to meet pressing demands made by the Lumber Export Company, under the terms of their contract. Davis drew on Sullivan, the executor— amount not stated in the bill—which the latter dishonored. We have no means of knowing how the account then stood, in the matter of the lumber contract, between the Molino Mills Company, and the estate of Daniel F. Sullivan. The pleadings furnish no *data* for such calculation. Nor does the defense set up, as a reason for dishonoring the draft, that it was in ex-

cess of the sum then earned and due from Sullivan's estate to the Molino Mills Company, on the lumber contract. Davis then notified Sowell & Co. not to ship or deliver any more lumber to Sullivan, executor, except through, and under the orders of him, Davis. Sowell & Co. disobeyed this order, and thereupon Davis filed this bill, and obtained a preliminary injunction against Sowell & Co. and Martin H. Sullivan, executor, restraining the one from delivering, and the other from receiving lumber under said contract. This injunction was dissolved on answer, and an appeal taken to this court.

It may as well be stated here as elsewhere, that in submitting to the chancellor the motion to dissolve, the note of submission states it was submitted on bill and answer. We will not, therefore, on this appeal, regard the affidavits which are found in the transcript. They were submitted on the other motion, heard at the same time, and not on this. We need not determine whether, if offered, they would have been admissible on the motion to dissolve.—*Barnard v. Davis,* 54 Ala. 565.

In the matter of making the contract with Sowell & Co., there is a difference of fact between the averments of the bill and the statements of the answer. The bill avers that Davis made the contract. The answer denies this, and states that Martin H. Sullivan contracted with Sowell & Co. So far as legal rights and liabilities are concerned, it would seem this can make no material difference. If, as the undisputed facts tend to show, Sowell & Co. were simply employed to aid in complying with the Molino Mills' part of the contract—that is, to manufacture the lumber the Molino Mills Company had promised to manufacture for Daniel F. Sullivan—then, if both Davis and Martin L. Sullivan were surviving partners, it was in effect a contract with both, and either would have the right to accept and receive the performance. On the other hand, if Martin H. Sullivan was not a partner, and, nevertheless, made the contract with Sowell & Co., then, in legal effect, the contract, if adopted by Davis, was made with him; Martin H. Sullivan being held, in such case, to have acted as the agent of Davis, the latter being the only partner authorized to make such contract. This question, like the other, must depend on the inquiry, whether Martin H. Sullivan was a partner in the Molino Mills Company.

It is contended that the injunction was rightly dissolved, because the bill presents no case for equitable interposition. The precise form of this argument is, that Davis had a complete and adequate remedy at law. If the averments of the bill be true, then a refusal by Sowell & Co. to deliver the lumber to Davis, on his demand and payment or tender of their proper charges, would be a conversion, for which an action would lie

[Davis v. Sowell & Co.]

against them. And turning over the lumber to Martin H. Sullivan, unless, as he alleges, he was a partner in the Molino Mills property, would give him no rightful possession; and any act of dominion he exercised over the property thus turned over, would render him personally liable therefor. If he applied it in part performance of Daniel F. Sullivan's sale to the Lumber Export Company, then it fastened a legal liability on the estate of said Daniel F., for which Davis could maintain an action at law, for goods sold and delivered. This, because the death of Daniel F. Sullivan removed every obstacle to the maintenance of such action.—*Lacy v. Le Bruce*, 6 Ala. 904.

There is another ground, however, on which, it is contended, the jurisdiction of the Chancery Court can be maintained. The performance of the contract made by Sowell & Co. manifestly contemplated many partial deliveries, running through many days,—in fact, several months. To sue at law, for each breach of duty, would require very many suits. The aggrieved party must incur this immense trouble and expense, or, taking the risks, wait until the entire contract is fulfilled, and then bring an action for the entire breach. Chancery sometimes intervenes to prevent a multiplicity of suits, or to quiet a long, harrassing litigation.—1 Pom. Eq. §§ 250, 252. We will not decide, at this stage of this case, and in the absence of further argument, whether or not this bill contains equity, in that it seeks to settle, in one suit, what it avers is a tortious wrong, continuous in its character. There is no averment that they are not solvent, or able to respond in the full measure of any injury the complainant may sustain. If it were averred that Sowell & Co. are not fully able to respond in damages, the complainant's case would be the stronger. It would possibly be impregnable, if all the defendants are unable to answer in damages for the wrong the bill charges they are committing against complainant.

We have, then, the naked case of a bill filed against parties who, in the absence of averment to the contrary, we must presume are amply able to make compensation for any tortious injury they may inflict. It is not charged that Sowell & Co do not deliver, and faithfully account to Sullivan, for all the logs turned into lumber and timber by them, according to the strict letter of their contract. It is not charged M. H. Sullivan is not faithfully and fully delivering the lumber and timber, thus received from Sowell & Co., to the Lumber Export Company, in performance of the large contract made by his testator with that company. The complaint is two-fold: first, that the lumber is not allowed to pass through the hands of Davis, surviving partner, who is thereby deprived of his right to know, and keep an account of the delivery, and its progress; second, that Sullivan, the executor, refused to honor Davis' draft, without stating

18

its amount, and without stating whether or not it was in excess of the sum due to the Molino Mills Company from Sullivan's estate, on the then partly performed contract to saw and deliver lumber, made by the company with Sullivan. Ought the injunction to have been awarded? In considering this question, we will regard as true the averment of the bill, that Davis was the surviving partner of the Molino Mills Company. What is relied on as a denial of this, is not strictly such It is a confession and avoidance.—*Rembert v. Brown*, 17 Ala. 667.

In High on Injunctions, § 13, it is said, the Chancery Court is sometimes "governed, in deciding an application for a preliminary injunction, by considerations of the relative convenience and inconvenience which may result to the parties from granting or withholding the writ. . . . Where it appears that greater danger is likely to result from granting, than from withholding the relief, or where the inconvenience seems to be equally divided as between the parties, the injunction will be refused, and the parties left as they are, until the legal right can be determined by law."

In the case of the *S. & C. Railway Co. v. S. & B. Railway Co.*, 1 Simons, N. S. 410, the purpose of the bill was to restrain the consummation of an agreement then under negotiation, which materially changed the relations existing between the two railway companies, under a prior contract still unexpired. The *gravamen* of the bill was, that the proposed change was unauthorized, and would be greatly injurious to the party complainant. A temporary injunction was moved for. A most elaborate opinion was delivered by Lord Cranworth, vice-chancellor, in which, after stating that "there can be no doubt of the fact, that the proposed agreement is an agreement altogether inconsistent with the contract of July, 1850," he refused the injunction, giving the following condensed reiteration of the reasons which influenced him: "Although I am perfectly satisfied of the authority of this court to issue an injunction, not merely to restrain parties from doing acts, but also from entering into contracts, pending litigation, that may embarrass the plaintiff in his suit; and that the court is entitled to do so, whenever it sees there is a fair ground for litigation raised by the plaintiff; yet, that right of the court must be guided by a discretion, not to exercise it where it sees that, on the balance of convenience and inconvenience between *interim* interference and *non-interim* interference, the balance greatly preponderates in favor of the defendant, and against the plaintiff. Now, here, the injury to the plaintiffs, in comparison with the injury to the defendants, is extremely small. The contract between the plaintiffs and the defendants may be put an end to in three years. The present rate of through traffic seems to be

[Davis v. Sowell & Co.]

something like £12,000 a year. Three years would be something like £36,000; that is, on both lines, so that it would be the half of that. The plaintiffs would be entitled, if there was no other remedy, to an action for that; and though it may not be quite easy for them to prove the exact amount they lose, yet that is a matter not altogether incapable of being estimated: and, on the whole, if the convenience and the inconvenience are weighed against each other, the inconvenience seems to me to preponderate, beyond all measure, in favor of the party who has the legal right to enter into any legal contract he pleases. This is the short ground on which I feel myself bound to refuse the injunction." To the same effect are *The Attorney-General v. The Mayor*, 1 Myl. &. Cr. 171; *Fielden v. L. & Y. Railway Co.*, 2 De Gex & Sm. Rep. 531; *Dyke v. Taylor*, 3 De Gex, F. & J. 467. And in this country the same doctrine prevails. In *Hack. Imp. Com. v. N. J. M. Railway Co.*, 7 N. J. Eq. 94, it is said: "An injunction will not issue, when the benefit secured by it is of little importance, while it will operate oppressively and to the great annoyance and injury of the defendant, unless the wrong complained of is wanton and unprovoked." To the same effect are *M. & E. R. R. Co. v. Prudden*, 5 N. J. Eq. 530; *Olmstead v. Kolster*, 14 Kan. 463; *Brown v. Pacific Mail Steamship Co.*, 5 Blatch. 525; *McCorkle v. Brem*, 76 N. C. 407.

The granting or withholding a preliminary injunction is, and, for manifest reasons, should be, largely a matter within enlightened discretion, controlled materially by the balance of convenience and inconvenience. Such writ, in this case, may cause a breach of Sullivan's contract with the Lumber Export Company, and entail large prospective damages for the breach. It may, moreover, render it impossible for the Molino Mills Company to perform its contract with D. F. Sullivan. This would entail a probable loss on the company, with possible damages for its breach of contract. Against these, we can conceive of no possible injury Davis can suffer from the failure to obtain an injunction, which approximates them in amount. The injunction granted, taking only the averments of the bill as our guide, was improvidently granted; and having been dissolved, we think we should not reinstate it.

The decretal order of the chancellor, dissolving the injunction, is affirmed.