# Birmingham Mining & M. Co. *v.* Mutual Loan & Trust Co.

*Bill in Equity by Stockholders of Corporation, for Injunction to Restrain Prosecution of Suits against it by Directors, for Account, &c.*

1. *Suits against corporation by directors; injunction against, at instance of stockholders.*—A bill in equity by stockholders of a corporation alleged that a majority of its directors had combined together to wreck the company by mal-administration, and obtain its valuable property for themselves ; had authorized and directed its secretary to accept service in any suit by a creditor against the company, to waive notice, and consent that a trial be had immediately ; had instituted suits against the company on simulated and unjust claims for large amounts, which if recovered would greatly embarrass, if not ruin, the enterprise ; and, while the bill charged that the specified acts of mismanagement by the directors had made the corporation insolvent, yet it appeared from its averments that the business could be continued and made successful, if the wrongs complained of were redressed. On the filing of the bill, an injunction was granted, restraining the prosecution of said suits. The defendants filed answers, which were sworn to, denying all fraud and intentional wrong, and asserting that the claims on which said suits were brought are just

[Birmingham Mining & M. Co. v. Mutual Loan & Trust Co.]

demands. *Held*, that there was no error in refusing to dissolve said injunction on the denials of the answers, and that it was proper to retain the injunction until there could be a hearing on the merits. (McClellan, J., dissenting.)

APPEAL from the City Court of Birmingham, in equity. Tried before the Hon. H. A. SHARPE.

The Mutual Loan and Trust Company, a corporation, and others, suing as stockholders of the Birmingham Mining and Manufacturing Company, a corporation, filed the bill in this case, against said Birmingham Mining and Manufacturing Company, and Maclin Sloss, Fred Sloss, and Arthur W. Smith, individually, and as executors under the will of J. W. Sloss, deceased, and Robert Warnock. The proceedings in the case are sufficiently stated in the opinion. From a decree overruling a motion of the defendants to dissolve or modify the injunction granted on the bill as amended, the defendants appeal.

E. T. TALIAFERRO, and W. R. HOUGHTON, for appellants.

R. H. PEARSON, *contra*.

STONE, C. J.—This is a bill by stockholders of the appellant corporation against the company, and against certain of the directors, who, it is charged, constitute a majority of the board, and are in fact its governing body. It charges against the governing majority several acts of mal-administration; and as to certain of the larger of these transactions, it avers that they were knowingly and intentionally done, with the view of wrecking and ruining the corporation.

J. W. Sloss, Sr., was a large stockholder in the corporation. He is dead. Two of his sons, Mack Sloss and Fred Sloss, and Smith, his son-in-law, are his personal representatives. These three are members of the board of directors. The estate of J. W. Sloss, Sr., Mack Sloss, Fred and Smith, collectively, own a majority of the stock in the corporation, and the two Slosses and Smith are a majority of the active, resident members of the board of directors. The bill charges that the affairs of the corporation are managed and controlled by them, and in their interest.

Several specific acts of mal-administration and fraud are charged, which, if true, will uphold the bill on these grounds alone. The charges of simulated debts, of fraud, and of mal-administration are denied in the answers; and no rulings in the court below on these questions have been brought before us. We will not, therefore, comment on this aspect

of the case, further than we consider necessary to a proper solution of the question before us, to be stated further on.

At an adjourned meeting of the corporation's board of directors held October 26, 1891, there were present the four resident directors, M. Sloss, F. Sloss, Smith, and Warnock. These were a majority of the board. Secretary Smith, Jr., was also present. "Mr. Fred Sloss moved that Norman W. Smith, Jr., secretary and treasurer of this company, be, and he is hereby, authorized and instructed to accept service on any summons and complaint, filed in any suit against this company by any creditor who may now or hereafter hold any past due claims against this company, and that he waive (30) thirty days notice, and consent that the trial be had immediately. Which motion was adopted."

The present bill by minority stockholders was filed November 16, 1891. It avers that the acts of mal-administration and fraud alluded to above have rendered the corporation unable to pay all the debts set up against it, and that it is insolvent. That the personal representatives of J. W. Sloss, Sr., have brought suit against the corporation for sixty-two thousand dollars alleged to be due the estate; that Smith, the secretary, under the resolution copied above, has accepted service of the summons, and waived the thirty days notice; and that the said directors of the corporation refuse to defend the suit; that this step has been taken with a view of giving that claim a preference and priority over the other creditors of the corporation, and of absorbing the entire very valuable property and effects of the corporation into their own hands. The bill charges that the said claim in favor of J. W. Sloss' estate, on which suit has been brought, was and is an improper claim, and not a just charge against the corporation. This is denied in the answers, which were sworn to. The bill specified several acts of mal-administration, and among them the following: That the corporation had valuable contracts for furnishing lime-rock for furnaces, by which it was making handsome profits, but that the management had failed to comply with these contracts, by which it not only lost the profits that would have been realized, but had subjected the corporation to damages for the breach of the contracts. It is also charged and complained of, that Sloss and others, while directors of the corporation, had made a side speculation in the transaction with Jackson, by which the lime quarry at Blount Springs had been purchased. See Wait. Ins. Corp. §§ 570, 634; *Koehler v. Black River Falls Iron Co.*, 2 Black, U. S. 715; *Wardell v. Railroad Co.*, 103 U. S. 651. The substance of

the complaint is, that, by and through these various methods, this valuable property is intended to be absorbed by the Slosses and Smith, the majority of the active, governing body. All bad faith and actual fraud are denied in the answers; but, in consequence of an obvious mistake in the preparation of the transcript, we are not sure we correctly understand the merits of the Blount Springs transaction. We will not, therefore, comment on its equitable bearings.

On the filing of the bill an injunction was granted, restraining the prosecution of the suit for the recovery of sixty-two thousand dollars, which had been instituted by the personal representatives of J. W. Sloss, Sr., deceased.

The corporation has an outstanding bonded indebtedness of $150,000. It is among the uncontroverted facts in this case that half of this sum—$75,000—is held by the personal representatives of J. W. Sloss, Sr., as collateral security for the payment of the alleged debt of $62,000.

Soon after the injunction was granted, restraining the prosecution of the Sloss suit for $62,000, two other suits—one by Mack Sloss and the other by A. W. Smith, each a director—were brought against the corporation. The sum claimed in each of these suits exceed $18,000. On November 24, 1891, complainants filed an amendment to their bill, in which they aver and charge that each of these claims is simulated and unjust. On the filing of the amended bill a further injunction was granted, restraining the prosecution of these suits. Defendants answered the amended bill, denying the charges made against the justness of their claims, and setting forth the several considerations which, they claim, support them as proper debts of the corporation.

A motion was made in the City Court to dissolve the injunctions; and failing, to have them so modified as to allow the suits at law to be tried, granting to the complaining minority of the stockholders the privilege of appearing and defending the suits. Each of these motions was denied, and this ruling presents the question for our consideration.

The uncontroverted facts in this case show that the effect of allowing the several suits against the corporation to be tried, and judgments rendered, will be to secure to those creditors a prior lien on the property and effects of the corporation. And the resolution of the board of directors, copied above, by which the secretary was "authorized and instructed" to accept service of summons and waive the thirty days' notice, renders it difficult to resist the conclusion that such was the intention. It is thus shown that a dissolution of the injunction will have the effect of permit-

ting the directors of the corporation to have themselves, in their representative capacity and personally, preferred over the other non-secured creditors. This, if the corporation was insolvent, they had no authority to do. We considered this question very fully, in *Corey v. Wadsworth*, at this term, and collated many authorities bearing on the question. We will not attempt to reproduce the argument, or to add any thing to it. We adhere to it. See also *Gibson v. Trowbridge Furniture Co., ante p.* 357.

It will be observed that the principle last above stated is specially applicable to the relation which the governing board and corporate assets of an insolvent corporation sustained to its creditors. If the corporation be in fact insolvent—have not sufficient assets to pay its debts in full—it would seem the stockholders are without pecuniary interest in the administration of its effects. In line with this thought, it is contended for appellants "that no damage can result to complainants from a dissolution of the injunction. . . They are only stockholders, and the bill alleges that the corporation is insolvent. It is thus averred in the plainest terms that complainants have no monetary interest in the corporation." The following authorities are relied on:—*St. Mary's Bank v. St. John,* 25 Ala. 566; *Smith v. Huckabee,* 53 Ala. 191; *M. & W. P. R. R. Co. v. Branch,* 59 Ala. 139; *Elyton L. Co. v. Birmingham W. Co.,* 92 Ala. 407.

If the corporation is irremediably insolvent, and if the sole question raised by this record were the creditors' right to have the assets distributed ratably among them, it would seem that a bill by stockholders could not be maintained for such purpose. Having no pecuniary interest, they would not be the proper parties to complain. But the present bill is not filed for that controlling purpose. Its chief *gravamen* is that the directors have betrayed their trust, have made an unauthorized speculation in the matter of the Blount Springs property, are asserting and recognizing claims against the corporation for large amounts, which the bill disputes, and that the majority of the directors have combined together to wreck and ruin the corporation by mal-administration, so that they may absorb its valuable property into their own private fortunes.

It is true that the answers deny all fraud and intentional wrong, and assert that the claims on which suits have been brought are just demands. They do not, and, from manifest appearances, probably could not deny that their suits, amounting to about $100,000, if permitted to go into judgments, would secure to the plaintiffs in those suits a prefer-

[Hawkins v. Pearson.]

ence and lien on the corporate property, over all other non-secured creditors. Nor can we doubt that such judgments recovered would greatly embarrass, if not ruin the enterprise. Now, while the bill charges that the mismanagement of the directors has made the corporation insolvent, there is still pervading it an undenied inference and implication, that, with a redress of the wrongs complained of, the business may be continued and made successful.

It is not an inflexible rule, that when the special equities of a bill are denied, the injunction must be dissolved. The court considers all the circumstances, and if more evil and injury are likely to ensue from an order of dissolution than from an order retaining the injunction, the safer and customary rule is not to dissolve, until a hearing is had on the merits. This is conservatism, and conservatism is an essential element of equity.—3 Brick. Dig., 352, § 304; *Davis v. Sowell*, 77 Ala. 262; *Jackson v. Jackson*, 91 Ala. 292.

The directors who are made defendants to this suit have the possession and control of the corporation and its effects, and thus have the power and opportunity to guard and protect their interests. Balancing, as best we can, the probable, prospective profit and loss account, we will leave the injunction undisturbed until there can be a hearing on the merits.

Affirmed.

McCLELLAN, J., dissenting.