# Bolling *v.* Kirby & Brother.

### *Trover for Conversion of Sewing-Machine.*

1. *Payment of note by acceptance of property in satisfaction, and rescission thereof by agreement.*—On the sale of a sewing-machine on credit, the legal title being retained by the vendor, and the note of the purchaser and his wife taken for the agreed price, with a contemporaneous agreement that cattle will be accepted in payment at a specified price; if the vendor sends an agent to receive the cattle and deliver up the note, at the time and place appointed, and this is accordingly done, the note is thereby satisfied, and the title to the machine is vested in the purchaser; but, another creditor of the purchaser being present, or coming up, and claiming a lien on the cattle, it is competent for the purchaser to surrender the cattle to him, and hand the note back to the vendor's agent, whose want of authority to consent to the transaction being cured by the subsequent ratification of his principal, the payment and satisfaction of the note is cancelled, and the title to the machine is again vested in the vendor.

2. *What constitutes conversion.*—To constitute a conversion, there must be a destruction of the plaintiff's property, or some unlawful interference with his use, enjoyment, or dominion over it; or an appropriation of it by the defendant to his own use, or to the use of a third person, in disregard or defiance of the owner's right; or a withholding of possession, under a claim of title inconsistent with the title of the owner; and there must be a positive tortious act as distinguished from mere non-feasance, or neglect of a legal duty, or the failure to perform an act made obligatory by contract, whereby the property is lost to the owner. But any intermeddling with the property of another, or exercise of dominion over it, whether by the defendant alone, or in connection with others, in denial of the owner's rights, or subversive of his dominion, is a conversion, though the defendant had not the complete manucaption of the property.

3. *Same; case at bar.*—Plaintiff having gone to defendant's house to demand and retake a sewing-machine, which he had sold on credit to defendant's son-in-law, retaining the legal title in himself; if defendant interfered in the interest of his daughter, who was then living on his premises, and prevented plaintiff from taking possession of it, by the unqualified assertion of title in his daughter or himself, he would be guilty of a conversion; but, if there was a *bona fide* controversy as to the fact of payment, on which he based his refusal to deliver up the property, promising to deliver it the next day if he found payment had not been made, to which plaintiff assented, this would not constitute a conversion; and if he only received the property as belonging to his daughter, when she removed to his premises, and never in any manner interfered with her possession or use of it, nor did anything in connection with it except to make inquiry as to the disputed fact of payment, he would not be guilty of a conversion.

4. *Argumentative charge.*—An argumentative charge may properly be refused, but giving it is not a reversible error.

APPEAL from the Circuit Court of Marshall.
Tried before Hon. JOHN B. TALLY.

| | |
|---|---|
| 90 | 215 |
| 96 | 207 |
| 90 | 215 |
| 104 | 672 |
| 90 | 215 |
| 114 | 150 |
| 114 | 462 |
| 90 | 215 |
| 121 | 649 |
| 90 | 215 |
| 124 | 343 |
| 124 | 602 |
| 90 | 215 |
| 126 | 512 |
| 90 | 215 |
| 128 | 624 |
| 90 | 215 |
| 130 | 434 |
| 131 | 551 |
| 90 | 215 |
| 132 | 565 |
| 132 | 566 |
| 90 | 215 |
| 135 | 300 |
| 90 | 215 |
| 138 | 475 |
| 90 | 215 |
| 139 | 651 |
| 90 | 215 |
| 142 | 421 |
| 90 | 215 |
| 143 | 274 |

[Bolling v. Kirby & Brother.]

This action was brought by Kirby & Brother, suing as partners, against William Bolling, to recover damages for the alleged conversion of a sewing-machine; and was commenced in a justice's court, on the 30th September, 1887. The only plea was the general issue; and the contested questions of fact were, (1) whether the machine had been paid for, or still belonged to the plaintiffs; (2) whether the defendant had done anything in connection with it which constituted a conversion.

The machine had been sold by plaintiffs, as J. F. Kirby testified, on the 7th September, 1885, to Thomas Bishop and his wife, taking their joint note for the agreed price ($30), payable on the 15th November, 1885, and retaining the legal title in themselves until it was paid. Kirby testified, also, that when he delivered the machine to the purchasers, at their residence, "he agreed with said Bishop to take young cattle, at two and a half cents per pound, in payment of said note, and so indorsed on it; that in November, about the time the note fell due, he went to Bishop's house, and, being told by Mrs. Bishop that her husband had the cattle, left word for him to bring them to Guntersville, where he would have a man to receive them and to turn over the note on their delivery; that he then returned to Guntersville, and authorized one A. R. Hooper to receive the cattle for him, leaving the note with him to be surrendered to Bishop; and that he never saw the note again, until at the trial before the justice." Hooper testified, on the part of the plaintiff, that Bishop came to his store in Guntersville, a few days after the note had been left with him by Kirby, and said that he had brought the cattle to pay it; that they went together to the place where the cattle were standing in the street, and Bishop handed him a paper with the weights marked on it; that S. M. Bains and J. Y. Spooner stepped up to them just at that time; that he remarked the cattle weighed very heavy, but he would take them, and handed Bishop his note; that Spooner and Bains, one or both, immediately claimed the cattle, saying they had a mortgage or lien on them, and handed him a paper showing their claim; that Bishop "then traded with them, sold them the cattle, and handed his said note back to witness; that witness had not taken charge of the cattle, nor tried to drive them away, nor taken any control over them; and that Bishop, on handing him the note, said he had more cattle, and would bring them and pay off the note." The question whether the note was paid or not, as involved in the charges given and refused, was based on this evidence.

Kirby testified, also, that some time during the Fall of 1886,

he went to the residence of Bishop and wife to get the machine again, as the note had not been paid, but found that they had removed, and that Mrs. Bishop had gone to the house of the defendant, who is her father; "that he went to the defendant's house, and demanded the machine; that Mrs. Bishop came to the door of her house, in the defendant's yard, and claimed that it had been paid for; that the defendant then told him he could not take the machine away, as his daughter had paid for it, and it was hers; that he then tried to sell the machine to the defendant," who said that he already had one, "that his daughter was living with him, and that she claimed the note had been paid in cattle;" that the defendant, after some further conversation between them, "agreed to come to town, and see whether witness could take the machine, and said, if so, that he would not have anything further to do with it;" that he and the defendant met in Guntersville the next day, and defendant said he was ready to deliver the machine; that he then told defendant to deliver it at the office of Jno. G. Winston, and that he had never received it. Winston testified, on the part of the plaintiffs, that he agreed to receive the machine at the request of the parties; that defendant said, at the time, "that he was hauling cotton, and would send down the machine;" that he came to the office a few days afterwards, "and said that he had started with it tied on a cotton wagon, but it looked like it would break down, and he sent it back, but would send it down yet;" and that defendant afterwards told him "that Bishop had moved his family away, and had taken the machine." The defendant, testifying as a witness for himself, stated that in the Fall of 1886, Bishop having gone to Arkansas, he moved Mrs. Bishop and her children into a house on his own premises, "two or three hundred yards from his residence;" that she then had a sewing-machine, which he brought with her other furniture, and placed in the house occupied by her, and had never seen it since except in her house; that his interview with Kirby, when the latter came to demand the machine, occurred in the yard between the two houses; and he stated the substance of the interview, and the subsequent interviews in Guntersville, without material variance, as the other witnesses had.

On this evidence the court gave the following charges to the jury at the instance of the plaintiffs, the defendant duly excepting to each of them: (1.) "If the jury believe the evidence, the note read in evidence vests the legal title to the machine in plaintiffs." (2.) "If the jury believe the evidence, the note has not been paid, and is sufficient to vest title to the property in plaintiffs." (3.) "If the defendant had the

machine in his possession, or under his control, and promised plaintiffs to deliver it at Winston's office, and afterwards permitted some one else to take it out of his possession, or from under his control, whereby the machine was lost to plaintiffs, he is liable to them for its value." (4.) "If the defendant had the property in his possession, or under his control, and agreed to deliver it to plaintiffs; then he became plaintiffs' bailee, and it was his duty to keep the machine and deliver it to them." (5.) "If the defendant, by himself, or by some one in his employment and under his directions, got the machine, placed it on his wagon, and started to town with it; then the machine was under his control, and if he afterwards permitted some one else to take it out of his control, whereby it was lost to plaintiffs, this was a conversion, and he would be liable to plaintiffs for the value of the property." (6). "If the defendant told Kirby that he could not take the property from Mrs. Bishop, this is a circumstance to which the jury may look, to see whether defendant had control of the machine or not; and if he did have control of it, and refused to let Kirby have it, this would be a conversion." (7.) "If the jury believe from the evidence that the defendant had possession of the machine, or [it was] under his control, and he promised Kirby to deliver it to plaintiffs, at Winston's office in Guntersville, it was his legal duty to do so; and if, in disregard of his duty, he permitted some one else to take it away out of his control, whereby it was lost to plaintiffs, he is liable for its value."

The defendant requested eleven charges in writing, and duly excepted to their refusal. The first was the general charge on the evidence, the second is set out in the opinion of the court, and the others were in these words:

3. "If the jury should find from the evidence that Kirby went to defendant's house, and demanded the machine, and that the machine was there, this would not, of itself, constitute a conversion; and if this be all the defendant did in the way of converting the machine to his own use, their verdict should be for the defendant."

4. "If the jury find from the evidence that Bishop and wife bought a sewing-machine from plaintiffs, and made the note in evidence; and that Bishop went off, or left the country; and that the defendant moved Mrs. Bishop, his daughter, to a house on his plantation; and that Kirby went to her house, and demanded the machine; and that she claimed the note had been paid, and that Kirby was not entitled to the machine; and that defendant, who was there, then told Kirby that he could not take it away, or that he would not allow him to take it away; and that the defendant went to town the next day,

[Bolling v. Kirby & Brother.]

and agreed with Kirby that he would bring the machine and deliver it to Winston, plaintiffs' attorney, but did not in fact deliver it to Winston, but it was allowed to remain at the house occupied by Mrs. Bishop; and that Bishop and his wife afterward removed the machine from the country, this would not be a conversion by the defendant."

5. "If the jury find from the evidence that Hooper was authorized by plaintiff to receive cattle from Bishop in payment of the note, and that Bishop did deliver cattle to Hooper, and that said Hooper accepted the cattle, and delivered the note to Bishop; then the title to the cattle instantly vested in the plaintiffs, and this was a payment of the note, and the title to the machine then and there vested in Bishop; and though the jury may believe that Bains and Spooner came up, and claimed the cattle, and that Bishop gave the note back to Hooper, this would not re-invest the plaintiffs with the title to the machine, unless they show that Hooper had authority to make such a contract: and if he was only an agent authorized to receive the cattle, he had no authority to rescind the trade, and re-acquire the title to the machine; and plaintiffs can not recover in this event, and they should find for the defendant."

6. "If the jury find from the evidence that plaintiffs have the legal title to an Esty sewing-machine, style No. 3, plate No. 14,895, yet, before they can recover, they must prove to a reasonable certainty that the defendant converted to his own use an Esty sewing-machine, style No. 3, plate No. 14,895; and if the evidence does not satisfy the jury that the defendant converted this identical machine, they must find for the defendant."

7. "If the jury believe from all the evidence that Hooper was the agent of Kirby & Brother for the especial purpose of receiving the cattle from Bishop and delivering the note to him; that this was all the authority he had; that Bishop did deliver the property to said Hooper as such agent, in payment of the note, and Hooper then delivered the note to him; this was a payment of the debt, and the title to the machine vested in Bishop, and without further evidence the defendant ought to recover."

8. "Before the jury can find a verdict for the plaintiffs, they must believe from all the evidence that the defendant had the possession of the machine, and, while he had possession, converted it to his own use; and if they find that he did not convert it, they should find for the defendant."

9. "If the jury believe from all the evidence that Hooper was a special agent to receive the cattle and deliver the note, then they ought to find for the defendant."

[Bolling v. Kirby & Brother.]

10. "If the jury believe the evidence, they will find that the defendant was not the bailee of plaintiffs."

11. "If the jury believe the evidence, they will find that the defendant did not have the possession, custody, or control of the machine."

The charges given, the refusal of the several charges asked, and certain rulings on evidence which require no notice, are now assigned as error.

LUSK & BELL, for appellant.—(1.) The delivery of the cattle by Bishop to Hooper, plaintiffs' agent, operated a payment of the note, vested the title to the cattle in plaintiffs, and the title to the machine in Bishop and wife; and Hooper's subsequent acts, surrendering the cattle to Bishop, or to Bains and Spooner, and retaking the note, did not affect the rights of the parties.—2 Brick. Digest, 406, §§ 53, 60; 3 *Ib.* 733, §26 *Pilgreen v. State*, 71 Ala. 368; *Blackshear v. Burke*, 74 Ala. 239; *Townsend v. Brooks*, 76 Ala. 308; *Green v. Lewis*, 85 Ala. 221. The title to the machine having once vested in Bishop and his wife, no subsequent act on his part could affect her rights.—*Evans v. English*, 61 Ala. 416; *Wood v. Dunlap*, 73 Ala. 169; *Kennon v. Dibble*, 75 Ala. 351. (2.) No conversion by defendant, actual or constructive, is shown by the evidence, and the court erred in each of its rulings on this question.—*Central R. & B. Co. v. Lampley*, 76 Ala. 357; *Thweatt v. Stamps*, 67 Ala. 96; *Conner & Johnson v. Allen*, 33 Ala. 515; *Dent v. Chiles*, 5 S. & P. 383; *Farrar v. Rollins*, 37 Vt. 295; *Rogers v. Hine*, 2 Cal. 571, or 56 Amer. Dec. 363; *Tinker v. Morrill*, 39 Vt. 477, or 94 Amer. Dec. 345; *Poor v. Dankham*, 102 Mass. 309; *Vasse v. Smith*, 6 Cranch, 236; 8 Mees. & W. 540; Cooley on Torts, 454, n. 5; 2 Green. Ev., § 642; 6 Wait's A. & D. 168-9, 179-80; 2 Brick. Digest, 485, § 15; 3 *Ib.* 780, § 19.

McCLELLAN, J.—We do not doubt that the title to the machine involved in this action remained in the plaintiffs below, under the contract put in evidence, until the purchase-money thereof was paid. In considering the question whether the transaction between Hooper and Bishop was a payment, it may be admitted that Hooper was the special agent of plaintiffs to receive cattle in payment, and to deliver up the paper, and that he did so receive the cattle and deliver up the paper as that, without more, the debt was satisfied; and it may be further conceded that he had no authority to enter into an arrangement with Bishop, by which creditors of the latter, having a lien of some sort on the property, were allowed

[Bolling v. Kirby & Brother.]

to take the cattle, and the note was handed back to him by Bishop, and the satisfaction thereof obviated and expunged, so to speak. Yet we do not doubt that Bishop had full authority to make this arrangement, and that the lack of power to this end in Hooper was cured by the ratification of his unauthorized act in this behalf by his principals, the present plaintiffs. The note did not bind the wife.—2 Brick. Dig. p. 98; *Walker v. Struve*, 70 Ala. 167. Under the facts of the case, the delivery of the cattle in payment of the note was no more than an exchange of that property for the machine, vesting title to the machine in the husband alone; and this, even had the cattle belonged to the wife, of which there is no proof. *Wood v. Dunlap*, 73 Ala. 169; *Kennon v. Dibble*, 75 Ala. 351. The title thus being in Bishop alone, it was entirely competent for him to agree that the payment which had so vested it in him should be considered as not having been made, and that it should revest in Kirby & Brother; and this agreement he must be held to have made, by handing the note back to Hooper, in consideration of the cattle being applied to another debt owed by him. The rulings and instructions of the court on this part of the case were free from error.

It is not essential to a conversion which will support the action of trover, that the defendant should have the complete manucaption of the property. An intermeddling with, or dominion over the property of another, whether by the defendant alone, or in connection with others, which is subversive of the dominion of the true owner, and in denial of his rights, is a conversion.—*Freeman v. Scurlock*, 27 Ala. 407; *Conner v. Allen*, 33 Ala. 515. Hence, it is not important that, when Kirby went to the residence of the defendant to demand the machine, it was not in his possession strictly speaking, but in that of Mrs. Bishop, who then lived on his premises, if the defendant interfered to prevent, and did prevent the plaintiff from then taking possession of it, by the unqualified assertion of a title inconsistent with the plaintiffs', and an unconditional refusal to allow the plaintiffs to take the property away. Whether the defendant had the possession in himself or not, such intermeddling in defiance of plaintiffs' right was a conversion. But, if there was a *bona fide* controversy as to whether payment had been made, and if the defendant, while asserting payment, and predicating his right to prevent a removal of the property on title in Bishop, springing out of payment, recognized the controversy and uncertainty as to whether payment had been made, and declined to allow the machine to be removed until the truth of that matter could be ascertained; and if it was thereupon agreed between him and Kirby, that he should

[Bolling v. Kirby & Brother.]

go to Guntersville the next day, and satisfy himself about it, and that if he found the note had not been paid, the property should be surrendered to the plaintiffs,—these facts would not constitute a conversion. Such a qualified and conditional refusal by Mrs. Bishop would have been reasonable and justifiable under the circumstances, and would not have afforded any evidence of a conversion by her; and the interference of Bolling in her behalf stands upon the same footing.—*Dent. v. Chiles,* 5 S. & P. 383; *Butler v. Jones,* 80 Ala. 436. In such case, the plaintiffs are held to have assented to the retention of possession by Mrs. Bishop pending the investigation agreed on, and no action for conversion can be predicated on a possession so retained, until a demand and refusal to deliver after the assent has been withdrawn, or the time covered by it has lapsed. *Voltz v. Blackmar,* 64 N. Y. 646; *Finch v. Clark,* Phill. (N. C.) L. 335.

Conversion, which will sustain trover, must be a destruction of the plaintiff's property, or some unlawful interference with his use, enjoyment, or dominion over it; an appropriation of it by the defendant to his own use, or to the use of a third person, in disregard or defiance of the owner's right; or a withholding of possession under a claim of title inconsistent with the title of the owner.—*Glaze v. McMillan,* 7 Port. 279; *Gray v. Crocheron,* 8 Port. 191; *Freeman v. Scurlock, supra; Conner v. Allen, supra; Thweatt v. Stamps,* 67 Ala. 96; *Central R. R. & B. Co. v. Lampley,* 76 Ala. 357, 368; *Tinker v. Morrill,* 39 Vt. 477; s. c., 94 Amer. Dec. 345; *Burroughs v. Bayne,* 5 H. & N. 296; *Fauldes v. Willoughby,* 8 M. & W. 539; 2 Greenl. Ev. § 642. It is immaterial whether the conversion or appropriation be for the benefit of the defendant, or of a third person. "The true inquiry is, 'Does the defendant exercise a dominion over the property, in exclusion or defiance of the plaintiff's right?' If he does, that is, in law, a conversion, be it for his own or another person's use." Cooley on Torts, p. 448; *Liptrot v. Holmes,* 1 Kelly, 381–391.

Conversion upon which recovery in trover may be had must be a positive, tortious act. Nonfeasance, or neglect of legal duty, mere failure to perform an act made obligatory by contract, or by which property is lost to the owner, will not support the action.—*Sturgis v. Keith,* 57 Ill. 451; *Bailey v Moulthorp,* 55 Vt. 17; *Rodgers v. Hine,* 56 Amer. Dec. 363; *Ragsdale v. Williams,* 49 Amer. Dec. 406. A bailee is not liable in trover for a loss of property through larceny from him, or because of negligence resulting in its destruction.—*Hawkins v. Hoffman,* 6 Hill (N. Y.), 586; *Packard v. Getman,* 4 Wend. 613. If the bailee undertakes to carry *the property*

[Bolling v. Kirby & Brother.]

*to the owner*, and fails to do so, and it is subsequently lost while in his possession through no positive misconduct of his, he is not liable for conversion.—*Farrer v. Rollins*, 37 Vt. 295. But, if he does any affirmative act inconsistent with the bailment, and known by him to be so, trover will lie against him.—*Jones v. Hodgins*, 61 Mo. 480. And if, having notice of the claim of the true owner, he delivers the property to another person, or permits another to take it out of his possession, whereby it is lost to the plaintiff, he is liable for its value in this form of action.—*Dearborn v. Union Nat. Bank*, 58 Mo. 273; *Phillips v. Brigham*, 26 Ga. 617; *Ala. & Tenn. Rivers R. R. Co. v. Kidd*, 35 Ala. 209.

Each of the several charges given by the court below at the request of the plaintiff is supported by one or another of the principles we have announced. Only one of them is objectionable in any respect, and that not in such sort as will work a reversal. Charge No. 6 is argumentative in that it directs that the jury may look to certain testimony, &c., as determining whether defendant had control of the property; but, while the charge might have been refused on this ground, the giving of it is not a reversible error.—*Birmingham Brick Works v. Allen*, 86 Ala. 185.

Of the charges asked by the defendant, the 1st and 10th direct a verdict for the defendant, if the jury believe the evidence. We suppose these charges, as also charges 5, 7 and 9, were requested on the theory, that the cattle transaction, to which reference has been had, was a payment of Bishop's note, and operated a divestiture of plaintiff's title. This position, as we have seen, is untenable, and it follows that charges 1, 5, 7, 9 and 10 were properly refused. Charge No. 4 is bad, in that it required the jury to find that Bolling had not converted the property, although they should believe that, when Kirby demanded it from Mrs. Bishop, Bolling interfered, and unqualifiedly and unconditionally refused to allow him to remove it, and by these means prevented its removal. Charge No. 6 would have defeated a recovery, unless the jury believed Bolling converted the machine to his own use, when he would have been, as we have seen, equally liable for a conversion to the use of Bishop or Mrs. Bishop, or for a delivery to either of them, if he had possession or control of it after notice of plaintiffs' claim. Charge No. 8 is open to the same infirmity as No. 6, and moreover is misleading, at least, in its requirement of evidence of *possession* in the defendant, since the jury might thereby have been induced to the conclusion that his intermeddling with the property while, in srictness, the possession was in Mrs. Bishop, was not a con-

version, although it was in one aspect of the evidence a palpable dominion over it to the exclusion of plaintiffs' rights.

The defendant also requested the following charge: "If the jury find from the evidence that all the defendant did in reference to the machine was to move it with his daughter to a house on his place, and come to town to make inquiry as to what was the truth as to the payment of the note given by Bishop for the machine; and that he allowed his daughter, Mrs. Bishop, to remain in a house on his place; and that the machine was afterwards carried away by Bishop, one of the makers of the note; this would not make him guilty of a conversion of the sewing-machine, and the verdict of the jury should be for the defendant." This charge was refused, and an exception reserved. As we read the evidence, every fact it hypothesizes is based on testimony in the case. It is therefore not abstract. It presents the defendant's aspect of the case, not upon a part of the testimony, but on all of it. The jury are not restricted in determining whether they will believe the facts hypothesized to the evidence in behalf of the defendant, but they are directed to consider the whole evidence, and if upon that consideration they find these facts to be true, they must find for the defendant. If the charge asserts a correct proposition of law, therefore, it should have been given.—*Alexander v. Wheeler*, 78 Ala. 167; *Munkers v. State*, 87 Ala. 94. Our opinion is, that the charge asserts a sound principle of law. If the facts stated were found to exist by the jury, the only act the defendant did in connection with the property was in conservation of it—he gave it shelter—a "kindness to the owner done without any intention of injury to the thing, or of converting it—an act perfectly consistent with the right of the owner and his dominion over it."—*Conner v. Allen*, supra; *Dent v. Chiles*, supra. And though he thus gave shelter to the property, it was as property, the possessory right, at least, to which was in Mrs. Bishop, and, on these facts, he never disturbed her possession, or acquired any possession in himself, that would have authorized or enabled him to have prevented the removal of the machine by Bishop. The charge ought to have been given. So ought charge No. 2. The bare possession of property, without some wrongful act in the acquisition of possession, or in its detention, and without illegal assumption of ownership, or illegal user or misuser, is not a conversion.—*Glaze v. McMillan*, 7 Port. 297.

For the errors committed in refusing to give the two charges last considered, the judgment of the Circuit Court is reversed, and the cause remanded.