# King v. Franklin.

*Action of Trover.*

[Decided February 11, 1902.]

1. *Trial; objection to evidence, part of which is legal.*—An objection to a statement as a whole, part of which is good, may properly be overruled.
2. *Trover; evidence, competency; statement of attorney.*—In an action of trover, where the question of the voluntary surren-

[King v. Franklin.]

der of the property by plaintiff to defendant is in dispute, evidence is competent and relevant that, when defendant's agent came after the property, plaintiff's attorney told plaintiff, in the presence of said agent, "to object to any one taking it but an officer of the law."

3. *Objection to evidence, when too late.*—Where a mortgage was offered in evidence without objection, a motion subsequently made, in the course of the proceedings, to exclude the same because its execution was not proven, came too late and was properly overruled.

4. *Trover; damages; evidence; return of property before suit brought.*—Where property has been wrongfully taken in the first instance, evidence that defendant returned it before suit brought is competent and admissible on the question of measure of damages.

5. *Same; evidence; statement of party in recognition of other party's title.*—In an action of trover evidence of statements made by plaintiff as to a right or wish to redeem the property from defendant's mortgage is admissible and competent as tending to show a recognition by plaintiff of defendant's title under his mortgage.

6. *Same; evidence as to user of property by defendant, and return to plaintiff.*—In an action of trover, in connection with evidence for defendant that plaintiff voluntarily surrendered the property to defendant's agent, and made no demand therefor before suit was brought, it is competent for defendant to show that there was no illegal user or misuser of the property and that the same was returned.

7. *Trover, gist of action; conversion; charge.*—In an action of trover, a charge is erroneous which instructs the jury "that the only questions involved are the ownership of the property and the value of the same," as it wholly ignores the conversion of the property, which is the gist of the action.

8. *Trover; what constitutes; effect of voluntary surrender of property by plaintiff to defendant before suit brought; demand.*—In an action of trover, where the plaintiff voluntarily surrendered possession of the property to defendant, and made no demand therefor before commencing suit, plaintiff is not entitled to recover; as in such case it cannot be said that the property has been wrongfully taken, or that there has been an illegal assumption of ownership, or an illegal user or misuser of the property by the defendant.

9. *Charges, when properly refused.*—Argumentative charges are properly refused.

APPEAL from Colbert Circuit Court.

Tried before Hon. J. H. NATHAN, Special Judge.

Action of trover by Mattie Gray Franklin against Claude King for the conversion of a mule. The mule was purchased by Nathan Napier, father of plaintiff, from one Womble in 1896, and he executed to Womble a mortgage to secure the purchase money. When the last payment was made on this mortgage, on November 7, 1896, Womble endorsed on it as follows: "The above mortgage has been paid in full by the daughter, Mattie Gray Franklin, and has been transferred by me to her." The mule remained in Napier's possession until his death on July 16, 1898. During 1897 and the early part of 1898 Napier executed several mortgages to King upon said mule. After Napier's death and after the maturity of the debt secured by the mortgage King sent his agent to take the mule, and plaintiff, according to some of the evidence, after consultation with Whitlock and Johnson, and acting upon their advice, surrenderd the mule to said agent, who delivered it to defendant. Afterwards, King's debt having been paid out of other property included in the mortgage, he consented that plaintiff's brothers might take the mule back to the family of Nathan Napier. Plaintiff claimed that Napier never owned the mule, and that she bought it from Womble. She also denied surrendering the property voluntarily to defendant's agent. The court refused the following charges requested by defendant, viz: (1.) "If the jury believe from the evidence that the mule was sold by Charley Womble to Nathan Napier, that Napier executed a mortgage to Claude King on the mule, and after the death of Nathan Napier said King or his agent demanded possession of the mule under the mortgage, and further believe from the evidence that the plaintiff in this case surrendered the property to King or his agent, and did not afterwards demand possession of the property from King or his agent, before the bringing of this suit, then I charge you that the plaintiff cannot recover, and your verdict must be for the defendant." (2.) "If the jury believe from the evidence that at the time King or his agent demanded

possession of the property sued for under the mortgage executed by Nathan Napier to King that the plaintiff consulted with her friends as to whether she should sui render the property under the mortgage held by King and that under the advice of such friends, she surren⁰ dered the property, then I charge you that she cannot recovery the property even if you should find that she owned the property, unless you believe from the evidence that before the institution of this suit she made a demand on Claude King for the property." (3.) "If the jury believe from the evidence that Nathan Napier bought the mule from C. A. Womble and afterwards mortgaged it to Claude King, and that after the death of said Napier, the plaintiff voluntarily delivered the mule to defendant's agent to be sold under that mortgage, then your verdict should be for the defendant." (5.) "The jury in determining whether the plaintiff recognized Claude King's claim to a priority of mortgage on the horse sued for, can look to the fact, if it be a fact, that the plaintiff after surrendering possession of the property to Claude King's agent, tried to borrow the money to pay off King's mortgage, in connection with all the other evidence in the case; and if you believe from the evidence that she, at the time King took the horse, recognized that he had a superior claim to the horse, then the plaintiff cannot recover in this suit, and your verdict should be for the defendant." (7.) "If the jury believe from the evidence that the plaintiff consulted with Marion Whitlock and Mr. Johnson when Mr. Quinn went for the mule, and they advised her to give up the mule, and she did so under that advice, then the plaintiff cannot recover, and your verdict should be for the defendant." (8.) "If the jury believe from the evidence that the plaintiff delivered the mule sued for to Dan Quinn as the agent of Claude King, to be applied on the mortgage given by her father to King, then I charge you that the plaintiff cannot recover, and your verdict should be for the defendant." (10.) "If the jury believe from the evidence that plaintiff did set up claim to the mule, and further believe from the evidence that she afterwards voluntarily deliv-

ered the mule to Dan Quinn as the agent of Claude King, under the mortgage, then the plaintiff cannot recover, and your verdict should be for the defendant." (11.) "In determining whether the mortgage made by Nathan Napier to Claude King was with the knowledge and consent of the plaintiff, the jury can look to the fact, if it be a fact, that she said to Will Ricks in the spring of 1897 that her father could not sell either this or his other mule because he had mortgaged it to Claude King, in connection with all the other evidence in the case, and if you find from the evidence that she knew of the execution of the mortgage, and afterwards voluntarily surrendered it to Will Ricks or to Dan Quinn to be applied on King's mortgage, your verdict should be for the defendant." (13.) "If the plaintiff owned the property or was entitled to the immediate possession of it at the time it was demanded by King's agent and she at that time voluntarily surrendered possession of it to King's agent, that would not of itself make King guilty of a wrong, even if you believe King had no right to the property." (14.) "To constitute a conversion of property as alleged in this case there must be a wrongful taking or wrongful detention, or an illegal asumption of ownership, or an illegal use or misuser of the property sued for; and if you believe from the evidence that the plaintiff voluntarily delivered the property sued for to defendant's agent under the mortgage executed by her father to Claude King to be applied on that mortgage, then I charge you that the plaintiff cannot recover, and your verdict should be for the defendant." (16.) "If the plaintiff voluntarily delivered possession of the mule to King or his agent, then I charge you there was no wrongful taking of possession by King." (17.) "Even if the jury believe from the evidence that plaintiff owned the mule, or was entitled to the immediate possession of it, if she voluntarily surrendered possession of the mule to King's agent under the mortgage made to him by Napier; and further believe that 'she did not afterwards demand the possession from King before bringing suit for it, then she cannot recover in this case for a wrongful taking, and you should so find."

From a judgment for plaintiff defendant appeals.

KIRK & RATHER, for appellant, cited *Edisto Phosphate Co. v. Stanford*, 112 Ala. 493; *Corbitt v. Reynolds*, 68 Ala. 378; 98 Ala. 311; *Central Ry. Co. v. Lampley*, 76 Ala. 367; 33 Ala. 515; *Strauss & Sons v. Schwab*, 104 Ala. 672; *Davis & Son v. Hurt*, 114 Ala. 146.

JAMES JACKSON, for appellee. (No brief came to the hands of the Reporter.)

DOWDELL, J.—This was an action in trover for the conversion of a mule brought by the appellee against the appellant. In the course of the examination of the plaintiff as a witness in her own behalf, she was permitted to testify against the defendant's objection "that when one Ricks, agent of the defendant, came after the mule, claiming the same under a mortgage given by plaintiff's father, Nathan Napier, to the defendant that her attorney advised her that the mule was her property and to object to anyone taking it but an officer of the law." The question of a voluntary surrender of the mule by the plaintiff to defendant was a disputed fact in the case, and that part of the statement made in the presence of defendant's agent by her attorney, "to object to anyone taking it [the mule] but an officer of the law," was competent and relevant on this issue, and the objection being to the statement as a whole, a part of which was good, there was no error in overruling the objection.

After the introduction in evidence of the mortgage from the plaintiff's father to Womble, from whom the mule was purchased, with the indorsements thereon, without objection from the defendant, a motion subsequently made in the course of the proceedings to exclude the same on the ground that its execution was not proven was properly overruled as coming too late.

The court erred in sustaining the motion of the plaintiff to exclude the statement by Claude King that he sent the mule back to the family of Nathan Napier, where it was when he sent for it. Claude King was

sworn as a witness on behalf of the plaintiff, and this evidence came out on the direct examination by the plaintiff and was not at the time objected to. Besides, it would have been competent as offered by the defendant on the question of measure of damages. If the property had been wrongfully taken in the first instance the return of the same before suit brought would go in the reduction of damages. The title to the property was in dispute, and there was evidence tending to show that the mule belonged to Nathan Napier, and the court erred in excluding evidence of statements made by plaintiff as to a right or wish to redeem the mule from defendant's mortgage. The tendency of this evidence was to show a recognition by plaintiff of title in the defendant under his mortgage. There was evidence tending to show that the plaintiff voluntarily surrendered the mule to defendant's agent, and it was conceded, as shown by plaintiff's own testimony, that no demand was ever made on defendant for the mule before suit was brought. In connection with the evidence on the part of the defense that the mule was voluntarily delivered up to the defendant's agent, it was competent for the defendant to show that there was no illegal user or misuser of the property and that the same was returned, and the court erred in sustaining objection to evidence offered along this line.

In *Davis & Son v. Hurt,* 114 Ala. 150, it was said by this court: "The gist of the action of trover is the conversion; the right of property may reside in the plaintiff entitling him to pursue other remedies, but trover cannot be pursued without evidence of a conversion of the goods;" citing *Glaze v. McMillan,* 7 Porter 279; *Conner & Johnson v. Allen & Reynolds,* 33 Ala. 516; *Bolling v. Kirby & Bro.,* 90 Ala. 215. And in the same opinion, further quoting from the case of *Conner v. Allen,* 33 Ala. 516, it was said: "Trover is one of the actions the boundaries of which are distinctly marked and carefully preserved by the Code. A conversion is now, as it has ever been, the gist of that action, and without proof of it the plaintiff cannot recover, whatever else he may prove or whatever may be his right

under another form of action." And in that case the definition or description of a conversion given by Mr. Greenleaf was adopted, viz.: "Conversion in the sense of the law of trover consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it *in exclusion or defiance* of the plaintiff's right, or in withholding the possession from the plaintiff *under a claim of title inconsistent with his own.*" In that part of the oral charge of the court excepted to by the defendant, in which the court stated to the jury "that the only questions involved were, first, the ownership of the property, and, secondly, the value of the same," the gist of the action, *the conversion of the property,* was wholly ignored. In this respect the court was in error.

In *Strauss & Sons v. Schwab et al.,* 104 Ala. 672, in an opinion by McClellan, J., it was said: "Property taken and held under a void contract of sale cannot be said to be wrongfully taken, since it passed to the purchaser and is held by him through the voluntary act of the seller and acording to the intention of both parties. Nor can it be said in such case that there is an *illegal assumption* of ownership by the purchaser; that could only result when the assumption of ownership is against the consent and intention of the seller. And there could be no *illegal user or misuser* of the property while it is held under such void sale, since, though the sale be void, so long as it is not disaffirmed by the seller he is in the attitude of consenting to all uses to which an absolute owner might devote the chattels. And so it is with the possession. That, as well as the taking, the assumption of ownership and the uses to which the property is put whatever they may be, is, notwithstanding the contract of sale, void, by the permission of the seller, and cannot be tortious until that permission is withdrawn by an election properly evinced on his part to set aside the sale and reclaim his property;" citing *Bolling v. Knight & Bro.,* 90 Ala. 215, 222, s. c. 24 Am. St. Rep. 789.

In the present case, as above stated, there was evidence tending to show a voluntary surrender of the property by the plaintiff to the defendant, and, furthermore, without dispute the evidence showed that there was no demand for possession by the plaintiff before suit was brought. The several special charges requested in writing by the defendant which were predicated on this phase of the evidence, under the principles of law above stated, should have been given, and their refusal was error. Likewise the special charges predicated upon the proposition of no demand before suit brought, if the jury believed from the evidence that there was no wrongful taking in the first instance, but that the property was voluntarily delivered to the defendant, should have been given.

Charges 5 and 11 were argumentative. The many written charges requested by the defendant in varying form were directed to questions above discussed and we deem it unnecesary to consider them in detail, as what we have already said is sufficient for the purposes of another trial.

For the errors pointed out, the judgment of the circuit court is reversed and the cause remanded.