# BROWN *v.* PHILADELPHIA, BALTIMORE, & WASHINGTON RAILROAD COMPANY.*

CARRIERS; INTERSTATE COMMERCE LAW; FREIGHTS; TENDER.

**1.** Under the interstate commerce act it is unlawful for any carrier to

---

*Carriers—Freight.*—As to refusal of connecting carrier to surrender freight, induced by a mistake as to the rate due or as to prepayment of charges, as a conversion, see note to *Beasley* v. *Baltimore & P. R. Co.* 6 L.R.A. (N.S.) 1048.

charge, demand, collect, or receiver a greater or less or different compensation for the transportation of passengers or property than the regular published tariff rates.

2. Freight charges are not governed by the bill of lading or weigh bill, but are governed by the regular published tariff rate, and are in ordinary cases to be computed upon the actual weight of the shipment. Irrespective of any contract between the parties, the delivering carrier is authorized to accept no more than the correct charges.

3. An action by the consignee of a shipment of goods by freight, against the terminal carrier, for the conversion of the goods, lies, where, on weighing the goods, their true weight was found to be less than the weight given in the weigh bill, and the consignee made a tender of the legal charge, based upon the correct weight, which tender was refused until the matter of the freight charges could be adjusted with a connecting line, and the carrier did not offer to deliver the goods until ten days after the tender was made, when the consignee declined to accept them. (Following *Beasley* v. *Baltimore & P. R. Co.* 27 App. D. C. 595, 6 L.R.A. (N.S.) 1048.)

4. Tender to a carrier of the correct charge for a shipment, based upon its true weight, which the carrier has ascertained, operates to discharge its lien, and thereafter its possession of the goods is wrongful.

No. 2195.  Submitted December 7, 1910.  Decided January 3, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the Court, in an action of trover.  *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal brings into review a judgment of the supreme court of the District upon a verdict for the defendant, the Philadelphia, Baltimore, & Washington Railroad Company, in an action of trover for the conversion of 303 crates of mail boxes shipped to the plaintiff, Wisdom D. Brown, from Wapakoneta, Ohio.

The material facts are these: On January 16th, 1907, the defendant notified the plaintiff that it held a consignment of mail boxes for delivery to him. The following morning plain-

tiff called at defendant's freight office, where a dispute arose as
to the amount of the freight charges, the plaintiff contending
that the amount demanded by defendant's agent was based upon
a weight 2,500 pounds in excess of the actual weight of the ship-
ment. The weight and dimensions of these boxes being stand-
ardized by the government, any variation in the weight of the
shipment would be attributable to a variation in the weight of
the crates. In the weigh bill acompanying the shipment it was
stated that the shipment contained 303 crates of the aggregate
weight of 24,500 pounds; that the through rate was 38 cents per
hundred, making the total charges, according to the weigh bill,
$93.11. This weigh bill showed that the consignment was
weighed in the car on track scales; that is to say, the loaded car
was first weighed, and then the supposed weight of the car was
subtracted, the difference being the supposed net weight of the
shipment. This weigh bill was exhibited to the plaintiff by the
chief clerk of the defendant, who informed the plaintiff that
he must pay the amount called for by this bill, and await the
subsequent adjustment of the matter. The plaintiff demurred
and at his suggestion it was finally agreed that the defendant
would reweigh the shipment. On the next morning the plain-
tiff again went to the freight office of the defendant, and was
informed that the goods had been reweighed, and that the cor-
rect weight was 22,740 pounds. The plaintiff thereupon asked
the defendant if he could get his goods, and was informed that
he could not until the matter had been taken up at headquarters
and with the connecting and initial line, or words to that effect.
The following day the defendant again weighed these goods,
on one scale only,—the first weighing having been made on sev-
eral new scales,—and the result of the second weighing was an
aggregate weight of 22,200 pounds. On that day an agent of
the plaintiff, an employee of the Union Storage Company, called
at the freight office and tendered a sum sufficient to pay the
charges on the revised or correct weight of the goods, but the
company declined to deliver them until the matter could be ad-
justed with said connecting line. On the 28th of January plain-
tiff again asked the defendant if it was ready to deliver the

goods, and was informed that the matter had not been adjusted, and that the goods could not be delivered until it was. Thereupon plaintiff notified the defendant that he would decline to receive the goods, contending that the delivery had been unduly delayed. No contention was ever made that any of these crates had been in any manner broken or disturbed, and it was admitted at the trial that the proper freight charges had been tendered by the plaintiff. This tender, it will be remembered, occurred about ten days before plaintiff declined to accept the goods. On January 30th the defendant's freight agent received authority to deliver the goods upon payment of the scale weight of 22,200 pounds, and delivery was thereupon tendered and refused. The goods were subsequently turned over to the Washington Storage Company, that company advancing the freight charges, and were finally sold by said company to satisfy storage and freight charges. A small balance is still in the hands of the Storage Company. The plaintiff was, of course, given legal notice that the sale was to be made. The defendant, at the trial, offered evidence tending to show that it exercised diligence in taking up the matter of the adjustment of the freight charges with the proper officials of its own line, and, through these officials, with said connecting line.

At the close of all the evidence the plaintiff moved the court for a directed verdict. This motion was refused and exception taken, which was renewed at the close of the court's charge.

*Mr. G. L. Baker, Mr. C. C. Miller,* and *Mr. H. H. Obear* for the appellant.

*Mr. Frederick D. McKenney, Mr. John S. Flannery,* and *Mr. G. Bowdoin Craighill* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The position of the court perhaps sufficiently appears from the defendant's two prayers, which were granted. They read as follows:

"1. If the jury shall find from the evidence that the freight

agent of the defendant, the Philadelphia, Baltimore, & Washington Railroad Company, had reasonable cause to hold the shipment of mail boxes consigned to the plaintiff because of the difference in weights, in order to obtain instructions from the intermediate and initial carriers for the delivery of the boxes at the correct weight, and that agent exercised reasonable diligence in endeavoring to obtain said instructions and in offering or tendering said boxes to the plaintiff upon receiving said instructions, their verdict must be for the defendant.

"2. The jury are instructed that the defendant, the Philadelphia, Baltimore, & Washington Railroad Company, is only liable in this action for the acts and omissions of its own agents and servants, and cannot be held responsible for any mistakes which may have been made or any delays in ascertaining the correct weight of and charges upon the shipment in question which may have occurred by reason of the acts and omissions of agents of the initial carrier, the Toledo & Ohio Central Railway Company, or the freight agent at Columbus, Ohio, or the auditor at Pittsburg, Pennsylvania, of the Union Line, the intermediate carrier, which received the shipment from said initial carrier, and delivered it to the defendant at Baltimore, Maryland."

Under the interstate commerce act it is unlawful for any carrier to charge, demand, collect, or receive a greater or less or different compensation for the transportation of passengers or property than the regular published tariff rates. When the goods in question arrived, the only dispute that arose, and, under the evidence, the only dispute that could have arisen, was whether the weighing by the initial carrier on its track scales and in the manner heretofore described should be accepted as correct, or whether the weight as ascertained by the defendant should govern. The first weighing by the defendant was on different scales, and evidently did not quite satisfy the defendant, for it again weighed the goods on a single scale, and that weight is conceded to have been correct. The delay from that time on was occasioned solely by the efforts of the defendant to adjust the matter with its connecting line.

It appearing that the defendant ascertained the correct weight of this shipment,—the weight which, under the law, was absolutely controlling, and that the plaintiff, after this weight had been thus ascertained, tendered correct freight charges based upon such weight, and that the defendant declined to deliver the goods for the reasons stated, and that the defendant thereafter held such goods until January 30th before offering to deliver them, we think it was error for the court to refuse the plaintiff's prayer for a directed verdict.    Under the admitted facts we think it clear that the withholding of the shipment was without justification, and formed a proper basis for the action of trover. *Beasley* v. *Baltimore & P. R. Co.* 27 App. D. C. 595, 6 L.R.A. (N.S.) 1048, and cases there cited.    See also *Bolling* v. *Kirby,* 24 Am. St. Rep. 807, and note thereto (90 Ala. 215, 7 So. 914). In the *Beasley Case,* which involved a shipment of horses, there was a dispute as to the proper rate, the bill of lading calling for one rate and the weigh bill for another.    This court assumed, without deciding, that the carrier in such a situation would be justified in holding the shipment a reasonable time until it ascertained the correct charge.    The same concession may be made in this case, since the carrier has a lien upon the goods for the amount of the legal freight charges.    Those charges, however, are not governed by the bill of lading or the weigh bill.    They are governed by the regular published tariff rate; and in a case like the present are to be computed upon the actual weight of the shipment.    In other words, irrespective of any contract between the parties, the delivering carrier, under the law, is authorized to accept no more and no less than the correct charge.    *Texas & P. R. Co.* v. *Mugg,* 202 U. S. 242, 50 L. ed. 1011, 26 Sup. Ct. Rep. 628; *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.* 204 U. S. 426, 51 L. ed. 553, 27 Sup. Ct. Rep. 350, 9 A. & E. Ann. Cas. 1075.    When this shipment arrived, therefore, and the weight as stated in the weigh bill was found to be incorrect, and the true weight was ascertained, it was the defendant's duty, upon being tendered the legal charge, to deliver the goods; and its refusal to do so rendered it liable to this action.    The tender of the correct charge under

the circumstances stated operated as a discharge of defendant's lien, and thereafter its possession of the goods was wrongful. The shipper, in such a situation, ought not to be compelled to await the tedious settlement of controversies between connecting carriers. The law having fixed the rate, it is the delivering carrier's duty, upon tender of the legal amount, to make prompt delivery, and subsequently adjust any differences that may arise between it and connecting lines. The delivering carrier is fully protected by the statute, and there is no reason for withholding the shipment, to the inconvenience and loss of the shipper or consignee.

The judgment will be reversed, with costs, and a new trial awarded. *Reversed.*