(99 South. 917)

## STORY v. ROBINSON. (3 Div. 663.)

(Supreme Court of Alabama. April 24, 1924.)

**Trover and conversion ☞66—Question of title to automobile held for jury.**

In suit for conversion of automobile, where evidence was conflicting as to whether plaintiff purchased retention title contract and balance of purchase price due under it, and had it transferred to him, or whether he paid it thereby vesting title in purchaser so that purchaser could trade it to defendant for another automobile, it was for jury, and affirmative charge was error.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action in trover by W. M. Robinson against W. S. Story. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Hill, Hill, Whiting & Thomas and J. Paul Jones, all of Montgomery, for appellant.

Legal title is necessary to maintain trover. Butler Cot. Oil Co. v. Campbell & Sons, 16 Ala. App. 445, 78 South. 643; Semple School v. Yielding, 16 Ala. App. 584, 80 South. 158; Sanders v. Rogers, 16 Ala. App. 231, 77 South. 69; 6 So. Dig. 266; Stockdale v. Cooper, 193 Ala. 258, 69 South. 110. A transfer by mere delivery of the note operates as an equitable mortgage. 190 Ala. 530, 67 South. 426; Code 1907, §§ 4985, 5007; Jones v. Bell, 201 Ala. 336, 77 South. 998. An agreement to indorse does not of itself amount to a transfer of the legal title. 8 C. J. 356; Andrews Bros. v. McCoy, 8 Ala. 920, 42 Am. Dec. 669; Gookin v. Richard, 11 Ala. 889, 46 Am. Dec. 232; Hull v. Planters' Bank, 6 Ala. 761. The general charge should never be given, where the evidence is conflicting. Taylor v. Birmingham Fertz. Co., 209 Ala. 218, 95 South. 886. 6 So. Rep. Dig. 1525 (143).

Ball & Beckwith, of Montgomery, for appellee.

Counsel argue the points raised, but without citing authorities.

MILLER, J. This is a suit by W. M. Robinson against W. S. Story, for damages for the conversion of a Chevrolet automobile. There were three counts in the complaint; counts 1 and 3 were withdrawn by plaintiff, and the cause was submitted to the jury on count 2, which claimed damages for the conversion of one Chevrolet automobile by the defendant, which was the property of plaintiff. This count described the automobile by its number, serial, and motor and year model. The defendant pleaded "general issue by consent with leave to introduce testimony as under special plea."

The plaintiff requested, and the court gave, the following written charge to the jury:

"If the jury believe all the evidence in this case they must find a verdict for the plaintiff."

The jury returned a verdict in favor of plaintiff, assessed the damages at $330, and, from a judgment thereon by the court, this appeal is prosecuted by the defendant.

This automobile was sold on December 19, 1919, by the Standard Auto Supply Company to S. H. Prine for $500 cash and $544.11 payable monthly in ten equal installments of $54.41 each. The contract was in writing, signed by the vendor and vendee, the title to remain in the vendor until the entire purchase price was paid. The note and contract for the unpaid purchase price were filed in the probate office of Montgomery county, Ala., for record on April 3, 1920. The Standard Auto Supply Company transferred the note and contract to the General Motors Acceptance Corporation on December 19, 1919, by written transfer on back of the contract. This transfer has written across it in red ink the word "Canceled." The balance due of this purchase price was $272 on May 28, 1920. On that day the plaintiff gave the Standard Auto Supply Company a check for that sum, and it was sent by them to the General Motors Acceptance Corporation. When the note and contract were returned by the General Motors Acceptance Corporation to the Standard Auto Supply Company with the word "Canceled" on the indorsement and transfer, they mailed both to plaintiff. When the plaintiff paid the $272 to the Standard Auto Supply Company by the check they issued and delivered to him the following receipt:

"Received of S. H. Prine $272.05 for balance on car serial number 284732 motor number 72562, same for notes to be delivered in ten days from date to W. H. Robinson. This 5-26-1920. [Signed] Standard Auto Supply Co., by J. F. Stephens."

When the papers were returned they were mailed to plaintiff and L. D. Stephens, an officer of the Standard Auto Supply Company, wrote plaintiff as follows:

"We are today in receipt of the S. H. Prine papers and inclose them herewith. We exceedingly regret as explained to you before the delay in getting these papers. We certainly hope you will have no trouble in getting this matter adjusted with Mr. Prine.

"With kindest regards, we are,
"Yours very truly,
"Standard Auto Supply Company.
"L. D. Stephens."

The plaintiff testified the foregoing receipt was given him at the time of the transaction. He also testified:

"Mr. Prine did not pay any money to the Standard Auto Supply Company; that he paid it himself; that he paid the money to the

Standard Auto Supply Company in satisfaction and cancellation of Mr. Prine's debt."

The plaintiff afterwards testified:

"I assumed Mr. Prine's responsibility to take up the mortgage."

There was evidence for plaintiff tending to show the note and contract belonged to him; but whether they were properly transferred to him is not presented by objection to their introduction in evidence. The plaintiff on cross-examination testified:

"Witness stated that Mr. Prine came to him and stated that he wanted to trade with Mr. Story for a Hupmobile, and that he wanted this Chevrolet car as part payment on the Hupmobile, and that he went around there to the Standard Auto Supply Company to pay balance due, knowing that Mr. Prine wanted to trade it for a Hupmobile. Witness was asked: 'And you went around there to the Standard Auto Supply Company and paid up the mortgage on it?' Witness answered: 'No; I went around there to take up that mortgage.' He was asked if he went around there to take up the mortgage so Mr. Prine could trade this Chevrolet car to Mr. Story for the Hupmobile, to which he answered, 'Not particularly.' Witness was asked: 'You know he wanted to trade it?' To which he replied: 'In case he wanted to trade, he could do so.' Q. 'In case he wanted to trade for a Hupmobile, he could do it? A. Yes, sir.'"

L. D. Stephens, witness for the plaintiff, testified:

"That the Standard Auto Supply Company showed an entry on their books 'Balance paid in full.'"

He was speaking of the account of Prine for this car.

There is evidence tending to show that Prine traded this car to the defendant for a Hupmobile, but before the defendant would trade with him Prine delivered to him a paper signed by the Standard Auto Supply Company that it claimed no lien against the car, "that Prine had paid them in full." This was about May 28, 1920, when the trade was made and the paper was given to defendant. This Hupmobile was delivered to Prine and Prine delivered the Chevrolet to defendant, and since then, and before this suit was filed, the defendant sold the Chevrolet car. The value of the car was $300 to $350 under the testimony.

In Glaze v. McMillion, 7 Port. 279, this court wrote:

"To maintain the action of trover, there must be property in the plaintiff, and a conversion, by the defendant."

In Corbitt v. Reynolds, 68 Ala. 379, in discussing trover, this court stated:

"To support the action, it was necessary for the plaintiff to prove property in himself, and a right to the possession at the time of the conversion by the appellant."

See, also, Bolling v. Kirby, 90 Ala. 215, 7 South. 914, 24 Am. St. Rep. 789; King v. Franklin, 132 Ala. 559, 31 South. 467.

There is evidence from which the jury could reasonably infer that the plaintiff paid the $272, balance of the purchase money due for the automobile, so Prine could trade it with the defendant, and did not intend to have the lien contract transferred to plaintiff. If this phase of the evidence was believed by the jury, then the title to and ownership of the car was in Prine and not in plaintiff; and the title to it passed to the defendant in the exchange of cars, and plaintiff would not be entitled to recover. There is testimony indicating a payment of the purchase-price debt by plaintiff for the car, and not a purchase of it by him. If the purchase price was paid by plaintiff, this vested the title to the car in Prine, the vendee, under the contract of sale. It provides and states:

"It is agreed the title to the said property shall not pass to the purchaser until said negotiable instrument and any interest due are fully paid in cash, with or without legal process, this to include any judgment secured."

The material fact of inquiry was whether the plaintiff purchased the contract and balance of the purchase price for the automobile due under it and had it transferred to him, or whether the plaintiff paid it, thereby vesting title to the car in Prine, so Prine could trade it to the defendant for the Hupmobile. The evidence and the reasonable tendencies of it were in conflict on this material fact, which was in issue, viz., the title to and the ownership of the Chevrolet car. There was evidence tending to show the title to it was in plaintiff under purchase and transfer of the conditional sale contract to him; and there was evidence tending to show it belonged to Prine, by plaintiff paying the purchase price so he could trade it to the defendant, and by the exchange of cars the title to and ownership of it passed to the defendant. This question of fact under the conflicting evidence should have been left by the court to the jury to decide. McMillan v. Aiken, 205 Ala. 35, head note 9–11, 88 South. 135. The trial court erred in giving the general affirmative charge in favor of the plaintiff.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.